STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JAMES PEETROS AND CHARLES THOMAS KOSKINAS, DEFENDANTS-RESPONDENTS.

Argued September 17, 1965—Decided October 25, 1965.

Mr. *Norman Heine,* Camden County Prosecutor, argued the cause for plaintiff-appellant (*Mr. Anthony M. Bezich,* Assistant Prosecutor, on the brief).

Mr. *Benjamin Asbell* argued the cause for defendant-respondent James Peetros.

Mr. *Joseph T. Sherman* argued the cause for defendant-respondent Charles Thomas Koskinas.

The opinion of the court was delivered

Per Curiam. Defendants, James Peetros and Charles Thomas Koskinas, were convicted of armed robbery. On appeal, in an unreported opinion, the Appellate Division reversed as to Peetros holding that the failure of the trial judge to instruct the jury on alibi was plain error and as to Koskinas, holding that certain cross-examination of him by the State regarding a crime involving firearms with which he had been charged but not convicted constituted reversible error. The Appellate Division remanded the cause for a new trial. We granted the State's petition for certification. 45 *N. J.* —— (1965).

The facts are relatively simple. As was his practice, John Daly, owner of Daly's Grill, left his place of business at 10:30 A.M. on June 23, 1961, and drove to a bank to cash checks. On the return trip he was cut off and forced to stop by a car that swerved in front of him. Two men wearing gloves, straw hats and sunglasses got out of the other car, put guns into Daly's ribs, and forced him to give them his

money. They then hit Daly with fist and gun, forced him to lie down on the floor of his car, returned to their car and drove away.

Daly said he recognized Peetros at the holdup scene as a man who had been in Daly's Grill on five successive Thursdays. Daly examined rogues' gallery photographs at Camden and Philadelphia without result. Five weeks after the holdup Daly saw the defendants, recognized them, saw them drive off in a white car with Pennsylvania license plates and reported this to the police. (Defendant Koskinas stated he owned a black Cadillac; defendant Peetros admitted owning a black Cadillac with a white top.) Some months later Daly was shown additional mug shots among which he found the pictures of the defendants. After defendants were apprehended, Daly picked them out of lineups as the holdup men.

Defendants claimed mistaken identity. Peetros denied he was ever in Daly's tavern, and testified he was with his dentist in Philadelphia between 10:00 A.M. and 11:00 A.M. on the day of the crime. He had no independent recollection of his whereabouts and relied upon an entry in the dentist's appointment book. The dentist also so testified on the basis of that entry. The entries in the appointment book were few in number, and were in pencil. The dentist said that the work done would have taken more than one hour to perform, and that he charged $5.00 for his services.

Koskinas testified that he could not remember where he was on June 23, 1961, but that on that day he never left Philadelphia, his place of residence.

I.

 Peetros prevailed in the Appellate Division upon his claim that the trial court committed "plain error" in failing to charge, although no request or objection was made, "that alibi was an element of the defense and that it was incumbent upon the State to prove beyond a reasonable doubt that Peetros was present at the scene of the crime." In re-

versing the conviction upon that ground the Appellate Division relied upon *State v. Searles*, 82 *N. J. Super.* 210, 213 (*App. Div.* 1964).

We have since held in *State v. Garvin*, 44 *N. J.* 268 (1965), that alibi is simply part of a defendant's general denial of guilt and that it need not be singled out for special instruction to the jury. We said (*p.* 274):

"* * * There is no need to speak of alibi in such separate terms, and indeed to do so will more likely obscure the case than clarify it. The important thing is to make it plain to jurors that to convict they must be satisfied upon a consideration of all of the evidence that guilt has been established beyond a reasonable doubt. If a defendant's factual claim is laid beside the State's and the jury understands that a reasonable doubt may arise out of the defense testimony as well as the State's, the jury has the issue in plain, unconfusing terms. If events at the trial should be thought to suggest to the jury that the defendant has the burden of proving he could not physically have committed the crime, then of course the trial court should dissipate that danger by telling the jury that the defendant does not have the burden of proving where he was at the critical time and that evidence offered on that score is to be considered with all the proof in deciding whether there is a reasonable doubt as to guilt."

It is true, as the dissent in the present case says, that a defendant who claims an alibi might find it awkward to contend not only that he was not there but also that the alleged criminal event itself never in fact occurred. If any awkwardness is involved, it is present whenever a defendant denies involvement in the critical event and hence is not peculiar to a claim of alibi. At any rate, we do not see how this problem bears upon the question whether there should be a special instruction upon a claim of alibi.

In the present case the factual situation was uncomplicated. Daly testified that defendants held him up and defendants testified they did not, Peetros adding that he was at his dentist's office at the hour of the crime and Koskinas saying he had no precise idea where he was at that time. The contending factual claims were arrayed against each other in plain

view. The court's charge[1] correctly described the State's burden to prove guilt beyond a reasonable doubt, requiring an acquittal if a reasonable doubt remained after a consideration of "all the evidence" in the case. The situation comes precisely within the following excerpt from *Garvin* (44 *N. J.*, at *p.* 274):

> "In the case before us, there was no room for misunderstanding. There was no intimation that defendant had to prove he was in Philadelphia or that he had the burden to create a reasonable doubt or that a reasonable doubt could not arise from his testimony. The trial court made it plain that the burden of proof was upon the State to establish guilt beyond a reasonable doubt upon the entire case. The factual issue was simple, and it was left to the jury in clear terms."

Hence the judgment of the Appellate Division cannot be sustained on the basis it gave. Nor can it be upheld upon other grounds Peetros urges. More specifically, we see

---

[1] The court charged:

"In this, as in every criminal case, the defendants are presumed to be innocent until they are respectively proven to be guilty.

The burden of proving the guilt of the defendants is upon the State, and always upon the State. That burden never shifts, but remains upon the shoulders of the State throughout the entire case. That burden is the burden of proving to you beyond a reasonable doubt that each defendant is respectively guilty of the crime as charged.

If there be a reasonable doubt as to the guilt of either or both of the defendants, then such defendant or defendants shall be declared not guilty.

Reasonable doubt is a term often used, probably rather well understood, but not easily defined. It is the state of the case which, after the entire comparison and consideration of *all the evidence*, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge. The evidence must establish the fact to a moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and the judgment of those who are bound to act conscientiously upon it. It is not a mere possible doubt, because everything relating to human affairs and depending on oral evidence is open to some possible or imaginary doubt.

But, if after canvassing *all the evidence*, giving the accused the benefit of reasonable doubt, you are led to the conclusion that the defendants or either of them are guilty, then you should so declare by your verdict." (Emphasis added)

no error in the trial court's refusal to permit Peetros to prove that he offered to submit to a lie detection test if the State would stipulate the results would be evidential; nor can we say the verdict was against the weight of the evidence.

## II.

As to Koskinas, the Appellate Division found error in the prosecutor's cross-examination with respect to a prior conviction for crime. The prosecutor held a report from the State Bureau of Identification showing defendant's several encounters with the law. The report showed a charge in Pennsylvania reading: "Fire Arms Act. Aslt. w/i to Ravish." The report noted this disposition: "250 F & C [fine and costs]. 9–18 Mos. If F & C are Pd. Par. under terms not to contact girl or family in any way."

The cross-examination complained of reads:

"Q. Have you ever been convicted of crime? A. Yes, I have.
Q. In Pennsylvania? A. Yes, sir, I have.
Q. Any other state? A. No.
Q. Just Pennsylvania? A. Yes, sir.
Q. Did that crime involve firearms, sir? A. No, sir.
Q. Use of firearms, guns, or anything like that? A. No, sir.
[Objection]

THE COURT: * * * [A]n answer was given, a negative answer. I see no harm. I will let it stand on the record.

Q. In the immediate area, Pennsylvania, January 30, 1961, were you not charged with violation of the Firearms Act, assault with intent to ravish, and given a sentence of $250.00 fine and nine to eighteen months in jail? A. I was charged, but I was not found guilty of the gun charge.

Q. Did you receive a sentence of $250.00 fine and nine to eighteen months in jail? A. Not for the gun charge."

Thereafter defendant was permitted by the court to advance this explanation:

"At the time of the arrest, I was searched and placed in their custody and in their car. Later on, a gun was found in their car, which they tried to charge me with. The Judge disqualified that charge."

Apparently subsequent investigation supported defendant's claim that he was not convicted on the weapons charge. The State Bureau's report in that respect was wrong or at least misleadingly ambiguous. At any rate, at the trial defendant's denial of a conviction under the firearms act was not disputed by any proof offered by the State. There was no motion for a mistrial, and since no such claim is made, we assume the prosecutor did not thereafter intimate to the jury that defendant had been convicted of a crime involving firearms. The final proposition in the trial court's charge to the jury confined the role of prior convictions to defendants' credibility and directed that they "shall not be considered as substantive proof that the defendants respectively committed the crime charged in the indictment."

We note at once that the good faith of the prosecutor is not in question and hence there is no call upon the Court's supervisory authority to reverse for intentional misbehavior without regard to its impact. Rather the question is whether what transpired infected the fairness of the trial. We think it did not.

The prosecutor did not suggest there was a conviction where in fact there was none. On the contrary the prosecutor was referring to one of several undisputed convictions for crime. Although it may be argued that a juror cannot but find "propensity" for crime in proof of prior convictions, the settled practice rests upon a faith that the jury will honor the instruction that such evidence bears only upon credibility. If that faith is misplaced, then of course prior convictions should not be provable—at least not a prior conviction for an offense which resembles in any way the allegations being tried. As we have said, the established practice is the other way, and it is in the context of this practice and the belief upon which it rests, that we must decide whether there was prejudicial error.

In this connection we are referred to *State v. Arnwine*, 67 *N. J. Super.* 483 (*App. Div.* 1961), where the defendant was convicted of incest with his 12-year-old daughter. The con-

viction was reversed because the prosecution erroneously referred to a prior conviction for "rape" when in fact the rape charge had been dismissed and the conviction was for assault and battery. The Appellate Division thought the charge of rape was "in the same area of a serious sex offense as the one with which he stood charged" and concluded the mistaken mention of such a charge was plain error in the context of the "reprehensible and revolting sex crime" for which he was on trial (at *p*. 486). We have not examined the record in that case and hence do not evaluate the result. We stress, however, that in the nature of the subject *Arnwine* cannot be understood to mean that reversible error necessarily exists whenever the essence of a prior conviction is misstated to reflect a factual element involved in the case on hand. Here the reference to a gun related to an assault with intent to ravish, which is quite different from an armed robbery. Indeed the conceded convictions involved the theft of property, a subject more related to the crime of robbery. Further, defendant's denial that he was convicted of a firearms violation remained unrebutted. In the total circumstances, we cannot say the prosecutor's misstatement impaired the presumed capacity of the jury to abide by the law.

■ Koskinas pressed a second point before the Appellate Division. We see no force in it. The trial court observed that the question is one of fact as to whether the State's witnesses or the defendant's "are telling the truth." In passing we note this analysis is correct enough, provided, in resolving that inquiry, the jury understands the State's burden of proof is beyond a reasonable doubt. This the trial court's charge, considered as a whole, made eminently clear. Koskinas did not suggest otherwise. The objection he made at trial, which frankly we find to be unclear, reads:

"I am objecting to that portion of the charge to the jury, because the question as to whether or not the State's witnesses are telling the truth is not in issue. The question for the jury to determine is whether the witnesses are relating the facts as they appear to them, and as

they know it, and not whether they are telling the truth or not telling the truth."

In his brief defendant argues the issue should be, not whether the State's witnesses *believe* they are telling the truth, but whether what they believe to be true *is* the truth. We do not see how the jury could have had any other understanding. Obviously the trial court did not say the jurors should convict if they found Mr. Daly was an honest but mistaken witness. The court directed the jury to seek the "truth," not Mr. Daly's belief as to what was the truth.

Finally Koskinas contends the verdict was against the weight of the evidence. We are satisfied the verdict does not reflect mistake, prejudice, partiality or passion.

The judgments of the Appellate Division are reversed and the judgments of conviction are affirmed.

FRANCIS, J. (dissenting). The defendants Peetros and Koskinas pleaded not guilty to the indictment charging them with the armed robbery of John Daly on June 23, 1961 in the Borough of Collingswood, Camden County. In his report to the police Daly fixed the hour of the event at about 10:45 A.M. Both men claimed they were elsewhere at the time and so it was impossible for them to have been present physically at the scene.

Peetros, who lived in the City of Philadelphia, testified at the trial that from 10:00 A.M. until after 11:00 A.M. on the day in question he was in a dentist's office in Philadelphia receiving treatment. He was corroborated by the dentist who produced his daybook showing the appointment. The record reveals no substantial attack on the regularity of the book or the integrity of the dentist.

Koskinas lived in suburban Philadelphia with his family on June 23, 1961. He could not remember where he was on that day but knew he did not come over to Camden or Collingswood. So he did not participate and could not have participated in the robbery.

Daly, the victim of the robbery, was the only witness of any consequence who identified the defendants as the perpetrators. Discussion of his testimony at length is not necessary for present purposes. It is sufficient to say that although leaving much to be desired, his statements clearly made out a case calling for jury determination.

I.

When a defendant in a criminal trial offers an alibi he relies on a principle of criminal law which has had recognition for hundreds of years. Unfortunately in many places it has been loosely and erroneously called a "defense." That description gave the matter a distorted focus and in some jurisdictions resulted in rulings which were at odds with basic principles imposing and controlling the burden of proof of guilt in criminal trials. For example, until recently, Pennsylvania espoused the illogical doctrine that a defendant who asserted he was "elsewhere" when the crime with which he was charged was committed, had the burden of proving that fact by the preponderance of the evidence. The difficulty thus presented caused the appellate courts to impose a mandatory duty on the trial judges to charge the jury with respect to that burden lest the jury conclude, in the absence of such instruction, that the defendant had to prove his alibi beyond a reasonable doubt. The incongruity of advising the jury that the burden of proving defendant's guilt beyond a reasonable doubt rested on the state and never shifted, and in the next breath saying the defendant had the burden of proving by the greater weight of the evidence that he was elsewhere at the time of the crime and thus could not have committed it, became apparent and produced an abandonment of the rule. Compare *Commonwealth v. Stein*, 305 *Pa.* 567, 158 *A.* 563 (*Sup. Ct.* 1932) ; *Commonwealth v. Trygar*, 121 *Pa. Super.* 525, 184 *A.* 271 (*Super. Ct.* 1936) ; and *Commonwealth v. Jordan*, 328 *Pa.* 439, 196 *A.* 10 (*Sup. Ct.* 1938)

with *Commonwealth v. Bonomo,* 396 *Pa.* 222, 151 *A. 2d* 441 (*Sup. Ct.* 1959).

An alibi is not an affirmative defense. It is simply a denial that the accused committed the crime; a denial of a specific element of the charge which the State has the burden of establishing beyond a reasonable doubt. It must be regarded in the same light as any other evidence tending to negative or weaken or destroy the prosecutor's case. 21 *Am. Jur. 2d, Criminal Law,* § 136, *p.* 206; *State v. Mucci,* 25 *N. J.* 423, 431 (1957). Although alibi has been spoken of in New Jersey also as a defense, we have never regarded it as imposing any affirmative burden of proof on the defendant, or as lightening the substantive burden traditionally resting on the State.

In our State the law has always been and still is that where presence of the defendant at the scene of the crime is essential to show its commission by him, the burden of proving that presence beyond a reasonable doubt is upon the State. The defendant has neither burden nor duty to show that he was elsewhere at the time and so could not have committed the offense. If he does offer evidence that he was elsewhere and that evidence alone or when considered by the jury in conjunction with all of the other circumstances of the case, whether introduced by the State or defense, leaves a reasonable doubt in the minds of the jurors as to defendant's presence at the place of the crime or as to whether he committed it, he should not be convicted. The offer of an alibi does not change the presumption of innocence or relieve the State of its responsibility to show defendant's presence and his guilt beyond a reasonable doubt. Even if the evidence offered by the defendant is insufficient of itself to satisfy the jury that he was not present, it cannot be rejected but must be considered by the jury with all the other facts in the case in deciding whether the State has satisfied its burden to the necessary degree. *State v. DeGeralmo,* 83 *N. J. L.* 135 (*Sup. Ct.* 1912). If the evidence that he was elsewhere falls short of itself of establishing the fact, but leaves in the minds of

the jurors such doubt or uncertainty that they cannot find for or against the alibi, they are bound to carry such doubt into the case for the prosecution, and to array it there as an element of the reasonable doubt beyond which the prosecution must prove guilt. The defendant is entitled as much to the benefit of such doubt as he is to any other doubt raised by the evidence or lack or insufficiency of evidence.

When a defendant claims he was elsewhere when the alleged crime was committed, under the law he puts in issue every element of the offense to the same extent as if he simply asserted the general plea of not guilty. His duty under *R. R.* 3 :5–9 to notify the State of the claim of alibi does not affect the nature of the prosecutor's proof obligation. But I cannot escape the conviction that the language of the Court in *State v. Garvin*, 44 *N. J.* 268 (1965), augmented by the majority opinion herein, reveals an intention to write out of the law the probative value which has always attached to a claim of alibi and the evidence adduced by the defendant to support it.

It is unrealistic to hold that the ordinary instructions on presumption of innocence, burden of proof and reasonable doubt are ample definition of the issues and provide sufficient enlightenment for the jury in cases where alibi is involved. Such a rule results in a prejudicial streamlining of criminal trials whenever a defendant offers proof to show that he was elsewhere when the alleged crime was perpetrated. And the unfortunate aspect of the new approach is that no appreciable benefit to the administration of the criminal law can possibly result. It may be conceded that from a layman's standpoint the word "alibi" in some respects has taken on an unfavorable connotation. Radio, television, newspapers, novels, etc. have tinged it with an aura of contrivance and suspicion. Yet we know the offer of proof in an appropriate case that the accused was elsewhere is a sound, necessary and just element of a criminal trial. Certainly no one would object to eliminating use of the word "alibi" at the trial, and the substitution of a statement such as that the defendant claims he was not present at the scene of the crime, or that he claims he was

elsewhere at the time, or simply that he has offered evidence to show he was at a particular place other than the site of the crime at the time.

The claim of alibi as it is known in the law cannot be looked at in a vacuum. Practical and psychological considerations intimately associated with human nature stand in the way. When a defendant pleads not guilty and claims he was elsewhere, psychologically he is more vulnerable to conviction than in the usual case. Unlike the defendant who defends generally on all issues, the accused with an alibi in effect puts his eggs in one basket. He cannot launch too strenuous an attack on the commission of the offense itself, or at least as vigorous an attack as is open to the ordinary defendant, for fear of exciting suspicion in the minds of the jurors as to why he concerns himself with that aspect of the case. Obviously he is on sensitive ground in most situations when the cross-examination of the State's witnesses moves beyond the issue of his identification as an actor at the scene of the crime. For this reason, I believe that when for all practical purposes a defendant's sole defense is that he was elsewhere when the crime was perpetrated, and where proof is introduced to support the claim, the trial court ought to be under a duty to charge the jury specifically (1) as to the obligation of the State to prove defendant's presence and participation in the crime beyond a reasonable doubt, (2) as to the absence of burden on the part of defendant to prove that he was elsewhere when the offense took place, (3) the factual contentions of the parties as to presence at and absence from the scene, and (4) the significance of defendant's claim and supporting evidence, either alone or in conjunction with all the evidence or the lack of evidence in the case, as explained above, in relation to the duty of the jury to acquit unless the State has satisfied them beyond a reasonable doubt of the accused's presence at the scene and his commission of the crime. This may be done easily without use of the word "alibi." In the type of situation described, where presence of the defendant at the scene is a controverted element of the

case, the accused's right to the explanatory charge should not depend upon a specific written request for it. *Cf. Commonwealth v. Bonomo, supra* (151 *A.* 2*d,* at 444, 445, 446–447); *Poe v. State,* 212 *Tenn.* 413, 370 *S. W.* 2*d* 488 (*Sup. Ct.* 1963); *State v. Spencer,* 256 *N. C.* 487, 124 *S. E.* 2*d* 175 (*Sup. Ct.* 1962); and see, Annotation, 118 *A. L. R.* 1303, 1316–1317 (1939). In this respect I agree with the view taken by the Appellate Division in *State v. Searles,* 82 *N. J. Super.* 210 (*App. Div.* 1964), and in this case also in reversing the conviction for the insufficiency of the trial court's charge.

When an accused's only real chance of acquittal depends upon an alibi, the trial judge's treatment of the case ought not to be considered legally sufficient treatment if his charge is limited to a perfunctory definition of reasonable doubt and a statement of the State's burden of proof. In a case where the accused's claim that he was elsewhere stands out sharply as the crucial issue, if nothing specific is said about its significance in the law, the jurors have no adequate standard to determine its effect. They may well feel authorized to adopt their own idea of its worth; or to conclude that if defendant's proof of itself is not of sufficient strength to establish the alibi clearly, it should be disregarded. Any rule which actually or in effect takes from the evidence of alibi (either alone or in conjunction with all other evidence in the case, particularly where identification is open to question) its capacity to raise a reasonable doubt does a disservice to the administration of criminal justice.

Aside from these general observations on the subject, it seems plain in the present case that the charge of the court, in light of the nature and conduct of the trial, did not satisfy even the requirements of *State v. Garvin, supra.* There the Court, after suggesting there is no need to speak of alibi in separate terms because to do so is more likely to obscure the case than to clarify it, added this qualification:

"If a defendant's factual claim is laid beside the State's and the jury understands that a reasonable doubt may arise out of the defense testimony as well as the State's, the jury has the issue in plain, unconfusing terms." 44 *N. J.*, at *p.* 274.

The charge of the trial court here was a bare-bones exposition of a few basic principles of law applicable to criminal trials; and that was its beginning and end. It did not contain a single reference to the evidence adduced by either the State or the defense; it did not lay the defendant's factual claim beside that of the State. In fact, if the indictment were not read to the jury during the course of the charge there would have been no statement of the date, place and victim of the alleged robbery. Anyone reading the instructions would not have the slightest notion that either defendant claimed he was elsewhere when the robbery was perpetrated. True, presumption of innocence, burden of proof and reasonable doubt were explained (although the jury was not told such doubt could arise from lack of evidence; see *State v. Driver*, 38 *N. J.* 255, 293 (1962)), but the office of a charge is more than that; basically it is to explain the factual contentions of the parties and to declare the rules of law applicable to any set of facts which may be found from the evidence. 5 *Wharton's Criminal Law and Procedure*, § 2090, *p.* 255 (1957). It should cover all important phases of the case which have any support in the evidence, and it should be directly addressed to the facts proved. Here the jury was permitted to roam at large among the facts and to do their best to apply the litany of legal principles given to them by the court.

Not only could the charge given here be applied to any robbery case by simply changing the names of the defendants, but in its generality it was deceptive and susceptible of erroneous interpretation as well. Without relating the statement in any way to the facts, the judge said to the jury:

"Principally, this case involves a question of fact, and that fact is whether or not the State's witnesses in their testimony as to what happened are telling the truth, or whether the defendants in their

respective denials as to the circumstances of the case are telling the truth."

Thus, in effect the jury was told that if they decided the robbery victim Daly was telling the *truth* when he identified Peetros and Koskinas as the robbers, a verdict of guilty could be returned. But Daly's truthfulness is not the test—certainly not the sole test. He might well be entirely truthful and yet be entirely mistaken in identifying the defendants as the perpetrators of the robbery.[1] Obviously the instruction was not only incorrect and incomplete, but it had the effect of equating a finding of Daly's truthfulness with absence of reasonable doubt of defendants' guilt. Koskinas objected to this portion of the charge but the trial court declined to alter his language.

Under all the circumstances, in my judgment it was plain error not to charge the jury specifically on the law respecting the effect of the alibi testimony. Consequently, I would affirm the action of the Appellate Division.

## II.

### The Examination of Koskinas Concerning His Criminal Record

As the opinion of the Appellate Division and the majority opinion of this Court indicate, Koskinas was asked preliminarily if his previous conviction of crime in Pennsylvania involved "firearms" or "use of firearms, guns, or anything like that." Immediately after a negative answer was given, defense counsel objected to the question as being prejudicial and suggested that since the assistant prosecutor seemed to be reading from a record, he should not ask the question unless the record showed the firearms conviction. Following a

---

[1] An excellent illustration of an obviously honest but mistaken identification in a robbery appeared in the New York Herald Tribune of Tuesday, September 28, 1965 while this dissent is being written. The victim of the mistake spent six months in prison before his exoneration.

side bar discussion, the court said he would allow the negative answer to stand, as he saw no harm in it. Then, although the assistant prosecutor had neither a certified copy of the record of conviction nor satisfactory proof of a conviction, he asked if Koskinas was not charged with "violation of the Firearms Act, assault with intent to ravish, and given a sentence of $250 fine and 9 to 18 months in jail." The defendant answered that he was "charged but not found guilty of the gun charge." Pursuit of the matter continued with a further question whether Koskinas had received "a sentence of $250 fine and 9 to 18 months in jail." Again the answer came: "Not for the gun charge." The fact was that on the charge of assault with intent to ravish, defendant was sentenced to pay a fine of $250 and costs, and to serve 9 to 18 months in jail; but if the fine and costs were paid, he was to be paroled "under terms not to contact girl or family in any way." After the trial the prosecutor verified Koskinas' statement that he had not been convicted on a gun charge.

Since this is an armed robbery case, the advantage sought by the State in attempting to prove Koskinas has been convicted previously on a charge involving a gun, is obvious. Moreover, the course of the questioning impelled the defendant to explain the gun charge by saying that when arrested on the assault complaint he was placed in the police car. "Later on," he said, a gun was found in their car and they tried unsuccessfully to charge him with it. This whole discussion about the gun under the circumstances of this case was unfairly damaging to the defendant—regardless of the good faith of the assistant prosecutor. While I appreciate the administrative problem of going beyond the State Bureau of Identification in these cases, yet the potential prejudice to a defendant is so great if sole reliance is placed on such record as a basis for cross-examination, and it turns out to be inaccurate, that the prosecutor must be deemed to have employed it at his peril. Certainly the defendant should not suffer as the result. All the discussion about the gun in this kind of case, coupled with both defendants' admission of

other convictions of crime, although not of robbery (Peetros' convictions were for bookmaking, lottery and being a common gambler), constituted prejudicial error, particularly in view of the court's strong charge on the effect of proof of convictions. Compare *State v. Arnwine*, 67 *N. J. Super.* 483 (*App. Div.* 1961). He said:

"I charge you that this evidence [convictions of crime] shall be considered by you for the purpose of affecting your belief in the respective defendant's testimony, * * *."

### III.

The evidence revealed that Peetros and Koskinas knew each other in Philadelphia before this crime was committed. Peetros' brother was a friend of Koskinas. The impression is inescapable from the record that in the jurors' minds what affected one defendant affected the other, and that the fate of one should be the fate of the other. Although on the whole case Peetros seems to have suffered the greater prejudice because of the disregard by the court of his corroborated alibi claim, yet in the framework of the case Koskinas was erred against also, and in sum the prejudice to which both were subjected can be remedied only by a reversal of the convictions.

For the reasons stated, I would affirm the judgment of the Appellate Division, and remand the matter for retrial.

SCHETTINO, J. (dissenting). I join in the dissenting opinion of Mr. Justice Francis.

Additionally, with respect to Justice Francis' mandate to the trial courts concerning their duty to charge specifically, when an accused claims that he was elsewhere, I suggest for the sake of clarity, that a trial court should pinpoint this mandate by some reference to the conflicting factual claims of the State and the defendant. For example, here, the State introduced evidence that defendants, Peetros and Koskinas, stopped Daly in Collingswood, Camden County and held him

up at gun point. Peetros offered counter testimony through himself and his dentist that Daly was mistaken in identifying Peetros, since at the time the alleged crime occurred, he was in Philadelphia at his dentist's office. Thus, the trial court could have cleared any possible confusion in the jury's minds and properly advised it in its determination, if it pointed out in its charge that the State had the burden of proving beyond a reasonable doubt that the defendant was at the exact scene of the alleged crime and did in fact participate in it and that the jury taking into consideration Peetros' and his dentist's contrary testimony might find that reasonable doubt existed in favor of defendant. Similar reference could have been made to defendant Koskinas' testimony that he was in Philadelphia at the time of the alleged crime, but that he could not remember precisely where.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL and HANEMAN—5.

*For affirmance*—Justices FRANCIS and SCHETTINO—2.