835 A.2d 323 (2003)
364 N.J. Super. 236
STATE of New Jersey, Plaintiff-Respondent,
v.
Almeen SWINT, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 15, 2003.
Decided November 10, 2003.
Yvonne Smith Segars, Public Defender, attorney for appellant (Alison Perrone, Designated Counsel, on the brief).
Paula T. Dow, Acting Essex County Prosecutor, attorney for respondent (Gary A. Thomas, Special Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and PARKER.
The opinion of the court was delivered by CIANCIA, J.A.D.
Following a trial by jury, defendant Almeen Swint was found guilty of two counts of first-degree robbery (counts one and five), N.J.S.A. 2C:15-1; two counts of attempted murder (counts two and six), N.J.S.A. 2C:11-3; N.J.S.A. 2C:5-1; N.J.S.A. 2C:2-6; two counts of second-degree aggravated assault (counts three and seven), N.J.S.A. 2C:12-1b(1); one count of third-degree unlawful possession of a weapon (count eight), N.J.S.A. 2C:39-5b; and one count of second-degree *324 possession of a weapon for an unlawful purpose (count nine), N.J.S.A. 2C:39-4a.
Defendant's sentence was sufficiently complex that we prefer to set it out verbatim:
It is therefore, on 4/30/02 ORDERED and ADJUDGED that the defendant is sentenced as follows:

COUNT 1: Sentenced to be committed to the custody of the Comm. Of The Dept. Of Corrections for a term of Fifteen (15) Years, must serve 85% before eligible for parole with Five (5) years mandatory parole supervision upon release, 50% parole ineligibility pursuant to Graves Act, subsumed therein; VCCB-$100., SNSF-$75., LEOTEF-$30. The sentence imposed on this Count is to run consecutive to the sentence imposed on Counts 5, 6 and 8 of this Indictment and is to run concurrent to Count 2, of this Indictment.

COUNT 2: Sentenced to be committed to the custody of the Comm. Of The Dept. Of Corrections for a term of Fifteen (15) Years, must serve 85% before eligible for parole with Five (5) years mandatory parole supervision upon release, 50% parole ineligibility pursuant to Graves Act, subsumed therein; VCCB-$100., SNSF-$75. The sentence imposed on this Count is to run consecutive to the sentence imposed on Counts 5, 6 and 8 of this Indictment and is to run concurrent to Count 1 of this Indictment.

COUNT 3: Merges with Count 2 for purposes of sentence and is DISMISSED.

COUNT 4: DISMISSEDDefendant found Not Guilty of this Count at trial.

COUNT 5: Sentenced to be committed to the custody of the Comm. Of The Dept. Of Corrections for a term of Fifteen (15) Years, must serve 85% before eligible for parole with Five (5) years mandatory parole supervision upon release, 50% parole ineligibility pursuant to Graves Act, subsumed therein; VCCB-$100., SNSF-$75. The sentence imposed on this Count is to run consecutive to the sentence imposed on Counts 1 and 2 of this Indictment and is to run concurrent to Counts 6 and 8 of this Indictment.

COUNT 6: Sentenced to be committed to the custody of the Comm. Of The Dept. Of Corrections for a term of Fifteen (15) Years, must serve 85% before eligible for parole with Five (5) years mandatory parole supervision upon release, 50% parole ineligibility pursuant to Graves Act, subsumed therein; VCCB-$100., SNSF-$75. The sentence imposed on this Count is to run consecutive to the sentence imposed on Counts 1 and 2 of this Indictment and is to run concurrent to Counts 5 and 8 of this Indictment.

COUNT 7: Merges with Count 6 for purposes of sentence and is DISMISSED.

COUNT 8: Sentenced to be committed to the custody of the Comm. Of The Dept. Of Corrections for a term of Five (5) years; VCCB-$50., SNSF-$75. The sentence imposed on this Count is to run consecutive to the sentence imposed on Counts 1 and 2 of this Indictment and is to run concurrent to Counts 5 and 6. Count 9: Merges with Counts 1 and 2 for purposes of sentence and is DISMISSED.
At sentencing the judge did not state the aggregate sentence, but the judgment of conviction shows the "total custodial term" as "30 years w/85%." Defendant's notice of appeal says the aggregate is "45 years with an 85% parole disqualifier." In our view the judgment of conviction gives the correct aggregate sentence. On appeal defendant contends:
*325 POINT ONE
THE TRIAL COURT'S REFUSAL TO PROVIDE THE MODEL JURY CHARGE ON POLICE PHOTOS REQUIRES THE REVERSAL OF DEFENDANT'S CONVICTIONS.
POINT TWO
THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE ISSUE OF ALIBI. (Not Raised Below)
POINT THREE
THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING TWO FIFTEEN-YEAR TERMS BECAUSE A QUALITATIVE WEIGHING OF THE AGGRAVATING AND MITIGATING FACTORS DOES NOT SUPPORT SUCH A SENTENCE.
POINT FOUR
THE IMPOSITION OF CONSECUTIVE SENTENCES IS CONTRARY TO THE PRINCIPLES OF STATE V. YARBOUGH, 100 N.J. 627[, 498 A.2d 1239] (1985), CERT. DENIED, 475 U.S. 1014 [106 S.Ct. 1193, 89 L.Ed.2d 308] (1986).
We find sufficient merit in defendant's first issue to require reversal of the judgment of conviction.
On April 18, 2000, at approximately 2:00 a.m., James Andrews and Duran Alicea were robbed at gunpoint while in Alicea's van in front of the World Paradise Club. Shots were fired and Andrews was struck in the head. He survived but lost vision in one eye.
The victims had ample opportunity to see the unmasked perpetrator, although there were discrepancies in their descriptions of what clothing he wore and how tall he was. Other witnesses at the scene did not see the perpetrator's face but gave descriptions of his clothing. Those witnesses, as well as Alicea, also thought there was a second gunman but that possibility was not fully developed at trial.
Approximately a month after the robbery both victims went to police headquarters to view a photo array. Each was separately shown six pictures and each selected defendant's picture. Defendant was arrested shortly thereafter. The police did not locate a gun or the proceeds of the robbery that included money and a gold chain.
Defendant testified on his own behalf and acknowledged being present in the area of the robbery at around 10:30 in the evening, but claimed he left shortly thereafter because he was under age and the World Paradise Club denied him entry. Defendant said he was home asleep at the time of the robbery. Other witnesses were called to corroborate defendant's version of events. Thus, the only significant issue at trial was identification.
The six-picture photo arrays shown to each victim were moved into evidence. During the charge conference the prosecutor characterized them as mug shots. Defendant now argues it was reversible error for the trial court to refuse to give the Model Jury Charge on Police Photos. The State responds that defense counsel never specifically requested the Model Jury Charge and the trial court did not refuse to give the Model Jury Charge. "Indeed had counsel requested such a charge, in all likelihood this issue would never have arisen." The State's position is disingenuous or, at best, hypertechnical. The following occurred during the course of the charge conference:
[DEFENSE COUNSEL]: Your Honor, with respect to the identification charge, just refresh my memory if you would. Would that include discussion as to the photographs that were generated by the police?

*326 THE COURT: It doesn't say specifically the photographs. You mean the photo array?
[DEFENSE COUNSEL]: Yeah.
THE COURT: Yeah. That's the out-of-court identification that it refers to, but you're welcome, during the lunch break, to take a look at the exact language.
[DEFENSE COUNSEL]: Okay. I would just, I would ask the Court just instruct the jurors that these photos that were compiled by police officers could have been obtained from a wide variety of sources. I don't want them thinking that these were mugshots [sic] necessarily, but from driver's license, votingthere's a wide array of where they could have obtained these photos. I think that, just out of fairness, that some sort of language in that regard should be included in the instruction.
THE COURT: [PROSECUTOR]?
[PROSECUTOR]: Your Honor, the evidence is admitted into evidence, the photo arrays. We canboth of the photo arraysI think they're S6 and S10 in evidence. Your Honor, the jurors are the ones that are going to giveweigh the credibility and theweigh that evidence, and they're the ones that are the triers of the fact, your Honor. Instructing them that these could have been generated in any course of manner, no testimony was ever elicited regarding that, your Honor, and I think that only will confuse the jurors into thinking, well, what is the Judge saying here, that these aren't important or this wasn't made.
I don't see the necessity, your Honorof course, they're mugshots [sic]. I mean, it's a police-generated photo array. For them to be anything else, I mean you would want to infer to the jurorsI don't think that they're going to believe you, your Honor. I think that they've, based upon their common sense, and they're reasonable, reasonable as everyday citizens, they're going to realize that there's six photos of six like individuals, and that the police didn't pull them out of their yearbook pictures in high school, your Honor.
But that being said, if Defense wants to generate something, and it wants me to review it, I'll be open to that, your Honor.
THE COURT: No. I don't think it's necessary. What else?
[DEFENSE COUNSEL]: Judge, just soyou'll note my exception for the record?
THE COURT: Exception to my denying your request to charge the jury that the photo array could have come from any number of sources is noted for the record, and my finding is that there's no basis for making that charge.
Although defense counsel did not request a "model charge" per se, she certainly requested the substance of that charge and that request was just as clearly denied. The language of the Model Jury Charge (Criminal), "IdentityPolice Photos" (1992) is:
There are in evidence photographs that were used to identify the defendant in this case.
With reference to the photographs submitted into evidence, you will notice that many or all of the photographs appeared to have been taken by a law enforcement agency, or some other government entity.
You are not to consider the fact that the agency obtained a photograph of the defendant as prejudicing him in any way. The photographs are not evidence that the defendant has ever been arrested or convicted of any crime. Such *327 photographs come into the hands of law enforcement from a variety of sources, including but not limited to driver's license applications, passports, ABC identification cards, various forms of government employment, private employment requiring state regulation, including but not limited to casino license applications, security guard applications, etc., or from a variety of other sources totally unconnected with criminal activity.
This is obviously the instruction sought by defense counsel. It was denied simply as not necessary. We fail to see any rational basis for not giving this instruction. Any temptation to characterize the trial court's failure as harmless error ends with three questions submitted by the jury during deliberations:
The three questions about the photo arrays are: Why is the photo background of the defendant much lighter than in other photos? The second question: What criteria was used to select the photos for the victims to look at? And lastly: Did the victims look at more than one photo arrays than the two presented into evidence?
Despite this obvious opportunity to provide the jury with the cautionary language of the Model Jury Charge, the court again failed to give the required instruction. Instead, the judge said the first two questions were "impossible" to answer and "inappropriate" to ask if outside the record. As to the third question, the answer was "no." A read back of testimony was offered if that was what the jury wanted.
The jury did not request a read back of any testimony and returned to its deliberations. Shortly thereafter the jury returned with its verdict.
The cases are legion where the failure to give accurate or necessary jury instructions constituted reversible error even if the instruction was not requested by defense counsel. See e.g., State v. Martin, 119 N.J. 2, 573 A.2d 1359 (1990); State v. Pierce, 330 N.J.Super. 479, 750 A.2d 139 (App.Div.2000); State v. Malloy, 324 N.J.Super. 525, 736 A.2d 532 (App.Div. 1999); State v. McNeil, 303 N.J.Super. 266, 696 A.2d 757 (App.Div.1997). The legal concepts were well stated by Justice O'Hern in State v. Grunow, 102 N.J. 133, 148-149, 506 A.2d 708 (1986):
We have always placed an extraordinarily high value on the importance of appropriate and proper jury charges to the right to trial by jury. Erroneous instructions on matters or issues material to the jurors' deliberations are presumed to be reversible error. State v. Collier, 90 N.J. 117, 122-23, 447 A.2d 168 (1982) (citing State v. Green, 86 N.J. 281, 291, 430 A.2d 914 (1981)). The right to a trial by jury includes certain intangible but real benefits to a defendant that are lost whenever the jury is induced to think incorrectly in terms of guilt. State v. Ingenito, 87 N.J. 204, 217, 432 A.2d 912 (1981). So paramount is the duty to insure a fair trial that a jury must deliberate in accordance with correct instructions even when such instructions are not requested by counsel. Unless a chosen trial strategy dictates against it, and perhaps in some cases even when that is the case, the court ordinarily has a supervening responsibility to charge the jury concerning any version of the offense "clearly indicate[d]" by the evidence to require proper jury consideration. State v. Choice, 98 N.J. 295, 299, 486 A.2d 833 (1985). So solemn is the jury's responsibility that we do not permit it to be misled by consideration of issues not proper for its deliberation. State v. Christener, 71 N.J. 55, 72-73, 362 A.2d 1153 (1976). "This judicial obligation, to assure the jury's impartial deliberations upon the *328 guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions, is at the core of the guarantee of a fair trial." State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979) (citations omitted).
Here, the jury was obviously concerned about the "criteria" used to select the photos shown to the victims. The legal concern is that police photos suggest the inadmissible postulate that defendant had a criminal history, may have been suspect for that reason, and the jury may then find him guilty on the same basis. See e.g., State v. Mays, 321 N.J.Super. 619, 631-633, 729 A.2d 1074 (App.Div.), certif. denied, 162 N.J. 132, 741 A.2d 99 (1999). The Model Charge is designed to neutralize that prejudice.
In a case such as this where the sole issue was identification and that, in turn, was influenced by whether defendant's alibi was credible, we cannot say the error was harmless.
We address defendant's second issue because of the possibility that this matter will be retried. Ultimately, we do not find it to be an additional basis for reversal.
Defense counsel did not request an alibi charge and the court did not provide one. Thus, defendant's contention on appeal is evaluated under the plain error standard i.e., was the error capable of producing an unjust result? R. 2:10-2. The State argues that an alibi instruction was not necessary because defendant admitted being present at the scene and his corroborating witnesses gave testimony that was not entirely consistent with defendant's. Although we find no plain error was committed, the State's rationale misses the mark.
Defendant testified he was present at the World Paradise Club at 10:30 or 10:45 p.m. but left around 11:15 p.m. when he was denied admission. He got some takeout food with a friend and went home. He arrived home around 11:30 or 11:45 p.m., ate his food, watched television with his fiancée and went to sleep. He got up at 8:30 the next morning. As noted, the crime took place around 2:00 a.m. that morning.
The friend that defendant was with when the two went for takeout food, Al-Malik Collins, also testified. He corroborated that he and defendant left the club after defendant was denied entrance because defendant was under age. They went and bought some takeout food and Collins dropped defendant off at defendant's home around 11:30 p.m.
Defendant's fiancée, Monica Gordon, testified that on the evening in question she was home watching television. Defendant returned home at approximately 11:45 p.m. They had a brief conversation. Defendant went into the kitchen and she went into the bathroom. They then both went into the bedroom and went to sleep. She saw him next "in the morning."
On cross-examination, the prosecutor managed to elicit certain inconsistencies from the corroborating witnesses, such as who else was with Collins and defendant at the club, and Collins' failure to testify as defendant had, that they had also tried to gain entry to another club that evening and had been denied admission. The State also now attacks Gordon's testimony because "she candidly admitted that she was asleep at the time of the shooting and that she could not confirm that the defendant was home at the time of the shooting."
We are at a loss to understand how the State's strained arguments constitute a valid basis for the trial court not giving an alibi charge. The State also argues that the charge was not sought by defense counsel as a matter of trial strategy. It was, indeed, a strange strategy considering *329 that defense counsel on summation stated in part:
You heard from Monica Gordon. Monica Gordon, yes, is his fiancee. Yes, you're going to hear that she's got a vested interest. Prosecutor will tell you that.
She has no reason to lie to you, Folks. She said that she was with him that night and that she saw him come in roughly 11I want to use her words, but I believe she said about 11:45. She says that she woke up the next morning after she went to bed, she said that she went to bed before one, she couldn't specifically give you the time, she says around 12:30, before one, and when she woke up around eight he was there.
Now, can she say specifically that, at 1:45, he didn't sneak out of bed, go down, get involved and come back? No. She can't. But you can use your own common sense. You can infer what you will from that.
She told you that, when he came in, he came in with his food, his chicken. I asked her what his demeanor was like. She said normal. She didn't say that he was one way or the other.
In State v. Searles, 82 N.J.Super. 210, 197 A.2d 384 (App.Div.1964), we held that the failure to give an alibi charge constituted plain error. The weight of that precedent was diminished by State v. Garvin, 44 N.J. 268, 208 A.2d 402 (1965), where the Court noted Searles but said that if the jury was properly instructed that defendant had no burden of proof, and that reasonable doubt can arise out of the defense's evidence as well as the State's and if "events at trial" did not suggest to the jury that defendant has the burden of proving he could not have physically committed the crime, then the absence of an alibi charge would not constitute plain error. Id. at 272-275, 208 A.2d 402.
In State v. Peetros, 45 N.J. 540, 214 A.2d 2 (1965), the Court adhered to Garvin, summarizing Garvin's holding as "alibi is simply part of a defendant's general denial of guilt and ... it need not be singled out for special instruction to the jury." Peetros, supra, at 544, 214 A.2d 2. The Appellate Division's reversal of Peetros' judgment of conviction was itself reversed once the Supreme Court was satisfied that the jury charge correctly described the State's burden to prove guilt beyond a reasonable doubt and required an acquittal if a reasonable doubt remained after consideration of all the evidence in the case. Id. at 545, 214 A.2d 2.
The Garvin/Peetros rationale has been followed ever since, although there are no recent decisions addressing the issue. See e.g., State v. Edge, 57 N.J. 580, 589, 274 A.2d 42 (1971); State v. Giberson, 153 N.J.Super. 241, 246, 379 A.2d 480 (App. Div.1977).
Here, the jury was given a full charge on identification. See State v. Green, 86 N.J. 281, 293-294, 430 A.2d 914 (1981). Part of that instruction was:
The defendant here, as part of his general denial of guilt and as part of his actual defense as presented here, contends that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he's the person who committed the alleged offense.
The burden of proving the identity of the person who committed the crime is upon the State. For you to find this defendant guilty, the State must prove beyond a reasonable doubt that this defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by *330 someone else or to prove the identity of that other person.
The jury was also charged:
The defendant on trial is presumed to be innocent, and unless each and every essential element of an offense charged is proved beyond a reasonable doubt, the defendant must be found not guilty of that charge. The burden of proving each element of a charge beyond a reasonable doubt rests upon the State, and that burden never shifts to the defendant.
The defendant in a criminal case has no obligation or duty to prove his or her innocence or offer any proof relating to his or her innocence. The Prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty. The State has the burden of proving a defendant guilty beyond a reasonable doubt.
....
A reasonable doubt is an honest and reasonable uncertainty in your minds about the guilt of the defendant after you've given full and impartial consideration to all of the evidence. A reasonable doubt may arise from the evidence itself, or from a lack of evidence. It's a doubt that a reasonable person, hearing the same evidence, would have.
In light of these instructions, we do not find that the absence of an alibi charge constituted plain error. If, on retrial, an alibi instruction is requested, and the proofs are similar to those we have just reviewed, then certainly the instruction should be given.
We reverse defendant's judgment of conviction for the reasons stated in relation to the court's failure to properly instruct the jury on the photo array pictures.
Accordingly, we do not reach the sentencing issues defendant has raised.
Reversed and remanded.