941 A.2d 599 (2008)
398 N.J. Super. 192
STATE of New Jersey, Plaintiff-Respondent,
v.
Terrence ECHOLS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2007.
Decided February 26, 2008.
*601 Daniel V. Gautieri, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Gautieri, on the brief).
Kenneth P. Ply, Assistant Essex County Prosecutor, argued the cause for respondent (Paula T. Dow, Essex County Prosecutor, attorney; Joan E. Love, of counsel and on the brief).
Before A.A. RODRIGUEZ, C.S. FISHER and C.L. MINIMAN.[1]
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we reverse the denial of defendant's petition for post-conviction relief (PCR), finding defendant was denied the effective assistance counsel because: trial counsel failed to fully elicit testimony regarding defendant's alleged alibi; appellate counsel failed to pursue on direct appeal the trial judge's refusal to give the jury an alibi instruction; trial counsel failed to object and appellate counsel failed to argue on appeal that the prosecutor's argument in his opening statementthat the jurors were safe in the courtroom only because of the presence of sheriff's officerswas prejudicial to defendant's right to a fair trial; and the confluence of these attorney errors and omissions, in the context of other circumstances, such as the testimony of witnesses in handcuffs and prison garb, which reinforced the prosecutor's prejudicial suggestions about the threat presented by defendant and others, generated a reasonable doubt about the fairness and reliability of the outcome.
On September 3, 1994, Franklin Powell was shot and killed in his apartment in Newark. Defendant Terrance Echols (defendant) and co-defendant Joseph Brown were indicted and charged with numerous offenses in connection with that occurrence.
The thrust of the State's case was that Franklin Powell was shot as part of a turf war among competing drug dealers. In affirming, we synopsized the evidence adduced, at trial in the following way:
On September 3, 1994, the victim was living with his sister, Lisa Lucas, at 279C Broadway in Newark. About 10:25 p.m. that evening, the victim, who sold "clips" (ten vials) of cocaine for $35, was in the first floor apartment. His sister was upstairs, doing laundry. Defendants, who were members of a drugdealing group called the Hit Squad, approached the apartment with white sheets over their faces. [Defendant] went to the back door with a gun while Brown went to the victim's front door with an automatic weapon. Earlier in the *602 evening, [defendant] had instructed his girlfriend to summon and hold a cab, because defendants were planning to go to her house to spend the night.
Brown kicked in the front, door, and [defendant] entered the apartment through the rear door, causing the victim, also known as "Quill," to try and run to the second floor. A few minutes later, gunfire was heard. Although the victim was fatally struck in the back and right leg, he managed to reach the second floor and shield his sister with a broken door before collapsing. Lisa Lucas . . . ran for help, but her brother died from the bullet wounds that penetrated his lung, liver, diaphragm, and stomach.
Defendants, meanwhile, ran from the apartment, through the building's backyard, and onto Broad Street, where [defendant] was seen holding something at his side. [Defendant] returned to the scene wearing different clothes and left in the waiting cab.
The police investigated the murder. At the crime scene, they discovered empty nine-millimeter Luger shell casings and a nine-millimeter slug, which could have been fired from an Uzi; a boot print on the apartment's front door; and blood on the apartment's first and second floors. They also inter-viewed numerous witnesses to the killing who gave them statements concerning what they had seen, identified defendants as the shooters, and explained that the Hit Squad had killed the victim because he was cutting into their drug operation.
On September 7, 1994, arrest warrants were issued for defendants, and the police arrested both on the following day. After receiving his Miranda[[2]] warnings, [defendant] waived them and gave a sworn statement on September 9, 1994, claiming that "I didn't shoot nobody." According to [defendant], Keith Eutsey . . . had gone to the victim's apartment, and other individuals were present. On the strength of these statements, [defendant] was released on bail and Keith Eutsey was arrested on September 15, 1994.
Upon his release, [defendant] and others began a campaign of intimidating witnesses, many of whom changed their original statements implicating [defendant] and Brown. Echols told Ada Dansby . . . that he would kill their son Shaquill like he killed Powell because the boy's name included the victim's nickname, "Quill," causing Dansby to file a terroristic threats complaint against him. [Defendant] also threatened Tracie Irvin . . ., the mother of the victim's child, telling her to "shut the fuck up, you stupid bitch, or I'll fuck you up[,]" and to stop talking about the murder or he would kill her. On October 26, 1994, [defendant] gave a statement to a private detective, employed by Eutsey's attorney, admitting that he had falsely accused Eutsey of Powell's killing.
On November 10, 1994, [defendant] went to the apartment of Shalika Thomason . . ., a former girlfriend, with two guns and a knife. He stuck Thomason with the knife as he attempted to force her to accompany him from the apartment. [Defendant] complained that he would be jailed the next day and "do about 25 years" because of statements Thomason had made to the police. When Thomason's friend attempted to intervene, [defendant] told her "Bitch, mind your own business or I kill all of you," and he threatened to put a "hit" out on her. Thomason told her friend to call the police, which her friend did.
*603 In 1996, at the conclusion of an eighteen-day jury trial, defendant was acquitted of conspiracy to commit murder and acquitted of purposeful or knowing murder, but he was convicted of felony murder, N.J.S.A. 2C:11-3(a), burglary, N.J.S.A. 2C:18-2, aggravated manslaughter, N.J.S.A. 2C:11-3(a), possession of a dangerous weapon, N.J.S.A. 2C:39-5, possession of a dangerous weapon for an unlawful purpose, N.J.S.A. 2C:39-4, making a false report to a police officer, N.J.S.A. 2C:18-3(b), false swearing, N.J.S.A. 2C:18-2, and hindering apprehension, N.J.S.A. 2C:29-3. After all appropriate mergers, defendant was sentenced to: a term of life imprisonment, with a thirty-year period of parole ineligibility, on the first-degree felony murder conviction; concurrent five-year terms on the merged weapons convictions and the hindering apprehension conviction; a concurrent eighteen-month term on the false report conviction; and an eighteen-month term, with a nine-month period of parole ineligibility, for false swearing, which was ordered to run consecutively to the life term.
Defendant argued in his direct appeal that he was entitled to reversal because: (1) the felony murder jury charge was erroneous with respect to the predicate crime of burglary; (2) the jury was not instructed that its members must be unanimous as to the underlying crime that formed the basis for the felony murder conviction; (3) he was prejudiced by the admission of Ada Dansby's testimony that someone pointed a gun at her face the morning she testified; (4) he was prejudiced by the admission of Ada Dansby's testimony that "everyone is scared of the defendant"; (5) the prosecutor argued to the jury that the defendants "did everything they could to prevent witnesses from testifying"; (6) members of the jury observed defendant in handcuffs; (7) defendant's other crimes and bad acts were erroneously admitted into evidence; (8) the trial judge's charge regarding the use of defendant's other crimes and bad acts was erroneous; and (9) the accumulation of errors deprived him of a fair trial.
In 2000, we rejected these arguments and affirmed the judgment of conviction, with one minor exception regarding the sentence, by way of a 105page unpublished opinion.[3]
Defendant filed a PCR petition in 2001. According to the trial judge, this petition was apparently "lost, misfiled, misplaced, or otherwise procedurally mishandled by either the office of the Essex Vicinage Criminal Division manager or the Office of the Public Defender . . . or both," and, as a result, co-defendant Brown's PCR petition was "ready to be heard before the Public Defender even assigned PCR counsel" to defendant. As a result, Brown's PCR petition was heard before defendant's petition was perfected. Brown's petition was denied, and then was affirmed by way of our unpublished opinion of November 14, 2005. Docket No. A-5806-03T4.
An evidentiary hearing was conducted regarding defendant's PCR petition in August and September 2005. On November 17, 2005, the trial judge denied the PCR petition for the reasons thoroughly elucidated in a 50page written opinion.
Defendant has now appealed the denial of his PCR petition, presenting the following arguments for our consideration:
I. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO FILE A TIMELY NOTICE OF ALIBI AND IN FAILING TO ELICIT A COMPLETE ALIBI, AND APPELLATE COUNSEL *604 WAS INEFFECTIVE IN FAILING TO ARGUE THAT THE TRIAL JUDGE ERRED IN FAILING TO CHARGE THE JURORS REGARDING AN ALIBI DEFENSE.
II. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO INVESTIGATE THE CRIME SCENE, AS SUCH AN INVESTIGATION WOULD HAVE REVEALED THAT TWO STATE'S WITNESSES WERE LYING WHEN THEY CLAIMED TO OBSERVE [DEFENDANT] IMMEDIATELY AFTER THE SHOOTING. COUNSEL WAS ALSO INEFFECTIVE IN FAILING TO INFORM THE JURORS, BY MEANS OF CROSS-EXAMINATION AND ARGUMENT IN SUMMATION, OF CRITICAL INCONSISTENCIES IN THE STORIES OF THE STATE'S FOUR KEY WITNESSES.
A. Trial Counsel Was Ineffective in His Failure to Investigate the Crime Scene, as He Could Have Demonstrated that Irvin and Dansby Were Lying When They Claimed that [Defendant] Fled the Crime Scene in a "Getaway" Taxi.
B. Trial Counsel Was Ineffective When he Failed to Utilize the Discovery to Demonstrate the Significant Inconsistencies in the Witnesses' Statements.
III. TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO LIMIT THE JURY'S EXPOSURE TO OTHER-CRIMES EVIDENCE AND IN ALLOWING THE STATE TO INTRODUCE EVIDENCE THAT "EVERYONE WAS AFRAID OF [DEFENDANT]."
IV. BECAUSE [DEFENDANT'S] STATEMENT TO THE POLICE COULD NOT BE EFFECTIVELY REDACTED, IT WAS NECESSARY TO SEVER THE TRIALS OF THE CO-DEFENDANTS, AND TRIAL OR APPELLATE COUNSEL OR BOTH WERE INEFFECTIVE IN FAILING TO RAISE THE ISSUE.
V. THE PROSECUTOR COMMITTED MISCONDUCT WHEN HE CHARACTERIZED [DEFENDANT] AS ENGAGING IN THE "VIOLENT CRIMINAL BUSINESS" OF DRUG SALES AND WHEN HE STATED THAT [DEFENDANT] AND HIS FELLOW GANG MEMBERS POSED A DANGER TO THE COMMUNITY AND TO THE JURORS. APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THIS ISSUE.
VI. BECAUSE THE STATE'S POLYGRAPH EXAMINER TOLD [DEFENDANT] THAT HE WOULD BE AN EXPERT WITNESS EITHER FOR OR AGAINST HIM, DEEPENING ON THE OUTCOME OF THE TEST, THERE WAS AN ORAL STIPULATION THAT THE EXAMINATION, WHICH [DEFENDANT] PASSED, WOULD BE ADMISSIBLE AT TRIAL. APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THIS ISSUE.
VII. THE COURT ERRED IN FAILING TO INSTRUCT JURORS THAT THE FACT THAT POLICE POSSESSED [DEFENDANT'S] PHOTOGRAPH WAS NOT TO BE USED TO SUPPORT THE CONCLUSION THAT HE HAD PRIOR CONVICTIONS, AND TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE IN NOT ADDRESSING THIS ISSUE.
VIII. THE COURT ERRED IN PERMITTING A STATE'S WITNESS TO TESTIFY IN HANDCUFFS AND IN PERMITTING TWO STATE'S WITNESSES AND DEFENDANT'S ALIBI *605 WITNESS TO TESTIFY IN PRISON GARB. TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE IN FAILING TO RAISE THE ISSUE.
IX. [DEFENDANT'S] CONVICTION FOR FELONY MURDER MUST BE VACATED BECAUSE THE PREDICATE FELONY, BURGLARY, WAS COMPLETE BEFORE THE SHOOING OCCURRED. IN THE ALTERNATIVE, [DEFENDANT] WAS ENTITLED TO HAVE JURORS DETERMINE, PURSUANT TO APPROPRIATE INSTRUCTIONS, WHETHER THE BURGLARY HAD BEEN COMPLETED PRIOR TO THE SHOOTING.
X. THIS COURT SHOULD GRANT [DEFENDANT] RELIEF ON THE BASIS OF CUMULATIVE ERROR.
After carefully examining the record, we find insufficient merit in Points II, III, IV, VII and IX to warrant discussion in a written opinion. R. 2:11-3(e)(2). We also find no merit in VI for the reasons briefly discussed toward the end of this opinion. And we conclude that the argument contained in Point VIII cannot be a cause for a reversal of the order under review, but it does provide additional support for our disposition of other issues, as more fully discussed later in this opinion.
After considering the arguments in Points I, V and X, and after a careful review of the record, we are convinced that defendant should have been granted postconviction relief. We hold that trial counsel was ineffective in failing to fully elicit testimony from defendant's alibi witness, and appellate counsel was ineffective in failing to raise on direct appeal the trial judge's failure to give an alibi instruction at the close of the trial. We are also satisfied that trial counsel was ineffective in failing to object when the prosecutor, in his opening statement, argued that witnesses had been intimidated and inappropriately asserted or suggested that the jurors would be in danger merely by sitting in the courtroom but for the presence of sheriff's officers, and appellate counsel was ineffective in failing to pursue that issue on appeal. We hold that either of these matters, standing alone, support defendant's right to a new trial, but we additionally hold, as urged by defendant in Point X, that their confluence also militates in favor of post-conviction relief.

I
In determining whether an accused has been deprived of the constitutional right to the effective assistance of counsel, we apply the two-part test formulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This test was also adopted as the means for determining when the performance of counsel offends our state constitution. State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987).
The Strickland/Fritz test requires that the court determine whether "counsel's representation fell below an objective standard of reasonableness," Strickland, supra, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693, and, if so, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The "prejudice" requirement of the second aspect of this test "was based on our conclusion that `[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the' error had no effect on the judgment.'" Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 209 (1985) (quoting Strickland, supra, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696).
*606 "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process" that it cannot be relied on as "having produced a just result." Strickland, supra, 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692-93. In holding that a PCR applicant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," the Court defined "reasonablele probability" as "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; see also State v. Fritz, supra, 105 N.J. at 52, 519 A.2d 336. In short, a defendant is not required to show with mathematical precision that he would have been acquitted instead of convicted but for trial counsel's mistakes, but is required to show only that his attorney's errors and omissions were of such significance as to undermine confidence in the outcome. In examining the parties' contentions, we must remain mindful that "[p]ost-conviction relief is a defendant's last opportunity to raise a constitutional challenge to the fairness and reliability of a criminal verdict in our state system." State v. Feaster, 184 N.J. 235, 249, 877 A.2d 229 (2005) (citing State v. Rue, 175 N.J. 1, 18, 811 A.2d 425 (2002)).

II
Defendant's arguments regarding his alleged alibi require our consideration of whether counsel sufficiently pursued the issue at trial and whether appellate counsel was ineffective in failing to pursue, on direct appeal, the trial judge's rejection of defendant's request for an alibi instruction.
The record reveals that defense counsel indicated during the course of the trial a desire to call Rashine Smallwood as an alibi witness despite defendant's failure to give notice of an alibi pursuant to R. 3:12-2(a). Counsel argued that confusion about the identity of this witness prevented him from informing the prosecutor until the trial had already begun. The trial judge conducted a hearing, pursuant to N.J.R.E. 104, during which Smallwood was examined outside the presence of the jury.
At the N.J.R.E. 104 hearing, Smallwood testified that he was in a parking lot outside the building that housed the victim's apartment when he heard gunshots, and that he and others, including defendant, ran together from the area as a result. He was specifically asked by defendant's attorney:
Q. Well, was there anybody else that you could see when you heard the gunshots?
A. Oh, yes. When I ran we got down the end of Broad Street, it was me, Jamine, Raymond and [defendant].
In light of this and other testimony, trial counsel sought to call Smallwood as an alibi witness in order to demonstrate that defendant was in the parking lot when Powell was shot and killed in his apartment.
The prosecutor objected, but the trial judge properly exercised his discretion in allowing the witness to testify about what he observed when the shots were fired. In the presence of the jury, Smallwood gave the following testimony:
Q. I'm going to ask you to remember back to Saturday evening, September 3rd, 1994, 10:00, 10:30 in the evening. Remember that day?
A. Yes.
Q. And where were you at the time? In the parking lot.
Q. Parking lot where?
A. Of Broad Street and Broadway.
Q. Is that in the area of 279C Broadway?

*607 A. Yes.
Q. And do you know who lives there or do you know now who lived there?
A. Now I do, yes.
Q. Who?
A. Franklin Powell.
Q. Now, were you with anybody in the parking lot that evening at that time?
A. I was with a girl at that time.
Q. Okay. With anybody else?
A. I was around Jamine Nelson, Raymond George and [defendant].
Q. Okay. And did something happen then, did you hear anything?
A. Yes, I heard shots.
Q. Do you know how many you heard?
A. Can't remember.
Q. And what did you do?
A. I ran.
Q. Did you seedid anybody else run?
A. Yes.
Q. Did you run together?
A. Yes.
Q. And who is it, tell the jury who is it who ran with you?
A. Raymond George, Jamine Nelson and [defendant].
Q. Okay. At any time did you see any gun in the hands of [defendant]?
A. No.
During the charge conference, defense counsel requested that the judge instruct the jury about his alibi. The judge initially responded that defendant had not given notice pursuant to R. 3:12-2(a), and concluded, in ruling against defendant, that the Smallwood testimony "wasn't an alibi." He summarized his reasons for refusing to give an alibi instruction in the following manner:
I'm not go[ing][to] give an alibi charge. I don't think it's appropriate in this case. I mean, it's clear on the facts and I don't consider that an alibi. It's clear where he was.
Was he thereif this is an alibi case then every case in which identity is at issue, every case in which the question of whether or not the defendant is the one who committed the crime is in issue is an alibi case. Because everybody, as a matterif somebody wasn't at the scene and they deny being at the scene at the time, then by definition they were somewhere else.
In ruling upon defendant's PCR petition, the trial judge further amplified his thoughts on the subject:
[T]he trial court refused [defendant's] request for an alibi charge to the jury . . . based on the determination that Smallwood's testimony was not actually an alibi. Smallwood's testimony only established that he saw [defendant] in the parking lot at the time gunshots were fired, a location that was not "elsewhere" or "another place." He was merely fifty feet from the murder scene. If Smallwood was not an alibi witness, then it was sensible for trial counsel not to file a notice of alibi, it was proper for the trial court to refuse an alibi charge, and it was wise for appellate counsel to focus on other more meritorious issues in its direct appeal. As the trial court pointed out, the issue was not alibi but rather one of identification. Here, [defendant] claimed to [be] at the scene in the parking lot fifty feet away from the murder site. If an alibi charge were proper in this case, then an alibi charge would be necessary in almost every case where identification was in issue because if the defendant were not the culprit, the defendant had to be somewhere else.
After carefully reviewing the matter, we agree with defendant's contention that (a) trial counsel failed to adequately elicit Smallwood's testimony that defendant was *608 not present in Powell's apartment during the shooting, (b) defendant was entitled to an alibi instruction, and (c) appellate counsel was ineffective in failing to pursue this issue on appeal. This combination of circumstances casts a reasonable doubt over the reliability of the outcome of the proceedings and entitles defendant to a new trial.

A
We agree with defendant's contention that the substance of Smallwood's testimony should have been more clearly elicited. As quoted above, Smallwood testified out of the presence of the jury that he was in the parking lot outside Powell's apartment, that defendant was also standing in the, parking lot, and that he and defendant, among others, ran from the parking lot when gunshots were heard; he further stated that he did not see a weapon in defendant's hand at that time. When the jury was present, defense counsel established through Smallwood's testimony that he and defendant, among others, were in the parking lot, that Smallwood heard gunshots, and that he and others, including defendant, ran from the scene. Defense counsel, however, never firmly established from the witness, while the jury was present, that defendant was in the parking lotand therefore not in the victim's apartmentat the moment the shots rang out. As a result, as defendant now persuasively argues, the jury "may have concluded that Smallwood observed [defendant] before the shooting and they ran away together after the shooting, yet [defendant] may have been inside Powell's apartment when the shots were fired." We agree that the testimony Smallwood gave while the jury was present does not preclude this possible, and perhaps likely, interpretation.
Considering the significance of evidence that defendant was elsewhere when the shooting occurredeven if only fifty feet awaywe agree that counsel should have more clearly elicited from Smallwood that defendant was in the parking lot and not in Powell's apartment when Powell was murdered.

B
Through Smallwood's testimony, defendant was attempting to convince the jury that he was not present in Powell's apartment at the time of the shooting. As we have observed, trial counsel's examination of Smallwood failed to fully educe the factual basis for that contention. Notwithstanding, the trial judge assumed that the point had been conveyed through Smallwood's testimony, yet refused to provide an alibi instruction to the jury during his charge. This determination was mistaken because it too narrowly viewed what constitutes an alibi and deprived the jury of a guide for considering defendant's theory of the case.
The term "alibi" literally means "elsewhere; in another place," and has "its evidential efficacy in the physical impossibility of the accused's guilt." State v. Mucci, 25 N.J. 423, 431, 136 A.2d 761 (1957) (citations omitted). The trial judge opined that because there was no dispute that defendant was at least in the neighborhood, this was not "an alibi case," and distinguished this case from State v. Peetros, 45 N.J. 540, 214 A.2d 2 (1965), where the crime occurred in Camden when defendant claimed he was in Philadelphia, and other similar cases. See State v. Garvin, 44 N.J. 268, 208 A.2d 402 (1965) (where defendant claimed he was in Philadelphia and not in Newark, where the crime occurred); State v. Swint, 364 N.J.Super. 236, 835 A.2d 323 (App.Div.2003) (where defendant's wife testified that he was *609 asleep at home and not outside a distant nightclub where the crime was committed); State v. Searles, 82 N.J.Super. 210, 197 A.2d 384 (App.Div.1964) (where the murder was committed in Camden while defendant claimed he was in Philadelphia). We reject the notion that a defendant's claim of an alibi is only cognizable when based on defendant's presence in another municipality when the crime was committed and reject the trial judge's conclusion that defendant was not sufficiently distant from the murder scene to give rise to a legitimate alibi.
An alibi is asserted whenever there is evidence that would suggest the accused was in some other location and, thus, could not possibly have committed the crime.[4] Although such a claim certainly requires consideration of the distance of the accused from the crime scene, we are satisfied that defendant's evidence that he was outside in a parking lot, and without a gun, when the gunshots that killed Powell rang out inside the apartment building, formed the factual basis for an alibi.
During the trial, the judge's mistaken view that there was an insufficient physical distance between the defendant and the crime carried two potential consequences for defendant. The first was the possibility that the trial judge would not permit Smallwood's testimony because defense counsel failed to serve notice upon the prosecutor pursuant to R. 3:12-2(a), and the second was the possibility that the trial judge would not give the jury an alibi instruction at the conclusion of the case. As we have already observed, the judge permitted Smallwood's testimony, so that counsel's failure to serve a notice of an alibi had no consequence.[5] But the judge also rejected defendant's request for an alibi instruction, a determination that was erroneous in light of our description of what constitutes an alibi, Although trial counsel was not ineffective, in the constitutional sense, in that regardbecause he did request such an instructionwe conclude that appellate counsel's failure to pursue the matter on appeal deprived defendant of the effective assistance of counsel.
In considering this latter point, the trial judge concluded in his PCR opinion that his identification instruction[6] was not *610 greatly distinguishable from the model alibi instruction[7] and, thus, the absence of the latter from his charge could not have affected the outcome of the trial. We disagree.
The focus of the two instructions is similar but not entirely the same. The identification instruction guides the jury as to how to consider evidence that defendant was seen committing the crime, whereas the alibi instruction informs the jury how to consider evidence that suggests it was not possible for the defendant to have committed the crime because he was not at the crime scene. The difference was explained by one court in the following persuasive manner:
An alibi defense differs from other mistaken identity defenses in an important respect: A defendant might win based on an alibi defense even if she does nothing at all to dispute the government's proof, because the alibi itself can create reasonable doubt. Without an alibi, the defendant would have to work much harder to disprove identity.

[United States v. Zuniga, 6 F.3d 569, 571 (9th Cir.1993).]
Moreover, the absence of an instruction about alibi evidence might permit the jury to assume that it was defendant's burden to prove the alibi. Id. at 570, 197 A.2d 384. Accordingly, the court in Zuniga held that the failure to give the jury an alibi instruction when there is evidence to support it "is reversible per se and can never be considered harmless error." Ibid. See also United States v. Burse, 531 F.2d 1151, 1153 (2d Cir.1976); United States v. Megna, 450 F.2d 511, 513 (5th Cir.1971); Pulley v. Maryland, 38 Md. App. 682, 382 A.2d 621, 625 (1978). We agree with Zuniga's analysis, and the approach taken by the other federal circuits referred to above, and conclude that prejudice accrues when, as here, a judge fails to provide an alibi instruction when applicable. State v. Driver, 38 N.J. 255, 290-91, 183 A.2d 655 (1962); Searles, supra, 82 N.J.Super. at 214, 197 A.2d 384; see also Peetros, supra, 45 N.J. at 554, 214 A.2d 2 (Francis, J., dissenting).[8]
*611 Indeed, the, alibi instruction should have been given if for no other reason than defendant was entitled to an instruction that would guide the jury in its, consideration of his theory of the case. Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54, 61 (1988); State v. Martin, 119 N.J. 2, 16, 573 A.2d 1359 (1990); State v. Sloane, 111 N.J. 293, 303, 544 A.2d 826 (1988); State v. Moultrie, 357 N.J.Super. 547, 556, 816 A.2d 180 (App.Div.2003); State v. Freeman, 324 N.J.Super. 463, 469-70, 735 A.2d 1195 (App.Div.1999); State v. Merola, 365 N.J.Super. 203, 224, 838 A.2d 543 (Law Div.2002). This is so even when the defendant's theory is supported by "[v]ery slight evidence." State v. Powell, 84 N.J. 305, 317, 419 A.2d 406 (1980); Moultrie, supra, 357 N.J.Super. at 556, 816 A.2d 180. A failure to so instruct a jury has a tendency to minimize the significance or worth of the defendant's theory of the case. Certainly the State's theory was well represented in the judge's charge; defendant's theory, which found support in the factual record, was entitled to no less respect.
We conclude that, although impeccable, the judge's identification instruction could not serve as a fair substitute for an alibi instruction. This is particularly true when it is considered that the identification instruction referred to both defendants whereas the alibi instruction, if given, would have referred only to defendant. The charge that was given neither highlighted defendant's alleged alibi nor isolated it from those instructions that applied to both defendants. We conclude that in this circumstance the failure to give the instruction prejudiced defendant's right to a fair trial.

C
The reasons we have just provided as to why the judge erred in failing to give the alibi instruction sought by trial counsel demonstrate that defendant's appellate counsel failed to conform to the standard constitutionally imposed in the direct appeal. Because we have concluded that the lack of an alibi instruction prejudiced defendant and had a probability of succeeding on direct appeal, we are satisfied that the omission of that viable argument on appeal violated the standard constitutionally imposed on appellate counsel by the Sixth Amendment.
Coupling the failure of trial counsel to more thoroughly elicit Smallwood's testimony with the trial judge's refusal to provide an alibi instruction and with appellate counsel's failure to seek our review of the lack of an alibi instruction on direct appeal, we conclude that defendant was deprived of the effective assistance of counsel and must be given a new trial.

III
Although the circumstances surrounding defendant's alleged alibi alone are sufficient to warrant the ordering of a new trial, we are also satisfied that certain of the prosecutor's comments, which were not objected to at trial and were not raised on direct appeal, prejudiced defendant and generated a reasonable doubt about the outcome of the trial.
In his opening statement, the prosecutor informed the jurors that defendant was a member of the "Hit Squad" gang, which like "the Mafia," is a "form of organized crime" involved in the "violent criminal business" of illegal drug sales. He then argued to the jury that this gang, of which defendant was a member, posed a danger to the community, as revealed by their alleged intimidation of witnesses in the case. Because the prosecutor intended to prove this, we may assume, for present purposes, that those comments constituted *612 a fair argument. But the prosecutor then stepped beyond the proper bounds of advocacy by informing the jury that defendant and the other gang members who would be in court during the trial posed a danger not only to the community but to the jurors themselves:
Listen to everything with an open mind. [The witnesses who had allegedly been intimidated] are not people who like you are able to sit in a fairly nice courtroom in Essex County. The sheriff officers are here, so that you can feel safe and comfortable. You know that nothing is going to happen to you. You are just hearing evidence. Think about people who are living in the community and why they might say, Well, my son is more important. My life is more important. I never saw nothing. I don't want to be involved anymore. Get me out of this.
[Emphasis added.]
The parameters that govern the arguments of prosecutors are well known. Prosecutors are permitted to "strike hard blows," but are "not at liberty to strike foul ones," Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935); accord State v. Wakefield, 190 N.J. 397, 436, 921 A.2d 954 (2007) (acknowledging that "[o]ur jurisprudence requires that prosecutors act in accordance with certain fundamental principles of fairness," including those explained at length in Berger), cert. denied, ___ U.S. ___ 128 S.Ct. 1074, ___ L.Ed.2d ___ (2008); State v. Pennington, 119 N.J. 547, 577, 575 A.2d 816 (1990) (summarizing the principles expressed in Berger as acknowledging that "[p]rosecutors may fight hard, but they must also fight fair"); State v. Sicilian, 21 N.J. 249, 262, 121 A.2d 490 (1956) (holding that "[a] prosecutor may be zealous in enforcing the law but he must nevertheless refrain from any conduct lacking in the essentials of fair play"). These limits emanate from the prosecutor's overriding obligation "not to obtain convictions, but to see that justice is done." State v. Ramseur, 106 N.J. 123, 320, 524 A.2d 188 (1987). Prosecutors are the representatives "not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as the obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger, supra, 295 U.S. at 88, 55 S.Ct. at 633, 79 L.Ed. at 1321. As a result, lilt is fair to say that the average jury, in a greater or lesser] degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed." Ibid. Consequently, a breach of these standards by a prosecutor tends to have a greater impact because of the unique position the prosecutor holds in the jury's eyes. Accordingly, when a prosecutor "has crossed the line and resulted in foul play, the reversal of the judgment below will be ordered." Siciliano, supra, 21 N.J. at 262, 121 A.2d 490.
The prosecutor's comment during his opening statement that the jury was safe in the courtroom from defendant and others only because the sheriffs officers were present far exceeded these principles. Notwithstanding this "foul blow," trial counsel did not object.[9] *613
Arguments or suggestions that the jury should convict to protect society from particular types of criminals are improper. See, e.g., Ramseur, supra, 106 N.J. at 321, 524 A.2d 188 (finding improper a summation that "[t]he laws are made for our protection and in this case, ladies and gentlemen; we must realize that it is our responsibility to protect everybody here who has no interest in this case and to protect everybody out there in the culture of Essex County from the cruel, horrible, inhumane acts of murder"); State v. Tilghman, 345 N.J.Super. 571, 577-78, 786 A.2d 128 (App.Div.2001) (criticizing comments in the prosecutor's opening and summation that "discussed the social problem posed by the vulnerability of elderly victims who are preyed upon by the young and strong"); State v. Acker, 265 N.J.Super. 351, 356, 627 A.2d 170 (App.Div.1993) (finding "egregious . . . the prosecutor's argument that it was the function of the jury to protect young victims of alleged sexual offenses as a group"). Here, not only did the prosecutor argue that the jury should act to protect the community from gang members involved in the violent business of dealing illegal drugs but that he also suggested the jury should act out of self-preservation because defendant posed a danger even to them. These comments far exceeded the bounds of proper advocacy.
We further consider, in this regard, the argument presently made by defendant that the trial court erred in requiring Darnell Jones and Rashine Donaldson, who were members of the "Hit Squad," to testify in handcuffs and Smallwood, whose testimony was critical to defendant's theory of the case, to testify in prison garb. We recognize that these contentions alone cannot be the basis for relief because the supporting case law did not fully develop until after the trial in this case. See State v. Artwell, 177 N.J. 526, 536-39, 832 A.2d 295 (2003); State v. Russell, 384 N.J.Super. 586, 895 A.2d 1163 (App.Div.2006). And it is readily apparent that these new parameters on the appearances of defendants and witnesses during trial were intended to have only prospective effect. See, e.g., Artwell, supra, 177 N.J. at 539, 832 A.2d 295. This does not mean, however, that we must be blind to the fact that the jury heard the testimony of witnesses who were handcuffed and dressed in prison garb. This acutely interfered with defendant's right to a fair trial because the appearances of these witnesses served to reinforce the prosecutor's egregious suggestion that defendants and other members of the "Hit Squad" posed a danger to the jury. See State v. King, 390 N.J.Super. 344, 363, 915 A.2d 587 (App.Div.), certif. denied, 190 N.J. 394, 921 A.2d 448 (2007). And, although Smallwood was not handcuffed during his testimony, he was dressed in prison garb. Since it was critical to defendant's theory of the case that the jury believe Smallwood's testimony, his appearance in court so attired had a tendency to diminish his credibility. Artwell, supra, 177 N.J. at 539, 832 A.2d 295; King, supra, 390 N.J.Super. at 363, 915 A.2d 587. These additional circumstances provide further support for the prejudicial impact generated by the prosecutor's improper opening statement.
We are satisfied that the first prong of the Strickland/Fritz test was met because *614 trial counsel failed to object when he had an obligation to object to the prosecutor's opening and because appellate counsel failed to raise this meritorious issue on appeal. And we are convinced that the second prong of the test of ineffectiveness is present as well. The jury heard about the danger the prosecutor believed was posed by defendant's presence without a discouraging word from defense counsel or the trial judge. Counsel's failure to object or to seek a cautionary instruction from the trial judge, which would no doubt have been forthcoming, allowed this improper consideration to brood over the jury's consideration of the issues posed and undoubtedly impacted upon the fairness of the trial and the reliability of its outcome.
As the Court stated in Strickland, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a fair result." 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692-93. The Supreme Court held that a PCR applicant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; it defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698 (emphasis added). We conclude that counsel's failure to seek relief in the trial court regarding the prosecutor's improper comments about the danger defendant posed, and the failure of appellate counsel to pursue the matter on direct appeal,[10] undermines confidence in the result and deprived defendant of the effective assistance of counsel guaranteed by the Sixth Amendment.

IV
Our Supreme Court has repeatedly recognized, as recently as last month, that even when "an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal." State v. Jenewicz, 193 N.J. 440, 473, 940 A.2d 269 (2008). See also State v. Koskovich, 168 N.J. 448, 540, 776 A.2d 144 (2001); State v. Orecchio, 16 N.J. 125, 129, 106 A.2d 541 (1954). We find that the omissions of counsel diminished defendant's theory of the case and cast doubt over the reliability of the outcome achieved in these proceedings.
"Our obligation is to ensure that defendant had a fair trial." Jenewicz, supra, 193 N.J. at 473; 940 A.2d 269. That admonition applies whether we review a matter on direct appeal or by way of an appeal from the disposition of a PCR petition. As Justice Jacobs said in Orecchio, "[t]he sound administration of criminal justice in our democracy requires that both the end and the means be just." 16 N.J. at 129, 106 A.2d 541. Thus, "no matter how abhorrent the offense charged nor how seemingly evident the guilt" an accused is entitled to a fair trial "surrounded by the substantive and procedural safeguards which have stood for centuries as bulwarks of liberty." Ibid. "This, of course, does not mean that the incidental legal errors, which creep into the trial but do not prejudice the rights of the accused or make the proceedings unfair, may be invoked to upset an otherwise valid conviction." *615 Ibid. But, where "the legal errors are of such magnitude as to prejudice the defendant's rights or, in their aggregate have rendered the trial unfair, our fundamental constitutional concepts dictate the granting of a new trial before an impartial jury." Ibid.
We have already demonstrated that defendant's right to a fair trial was prejudiced by the handling of the alibi testimony and related jury instructions, as well as the absence of an argument regarding the alibi on direct appeal, and, also, by the failure of counsel to object or attack on appeal the prosecutor's improper comments about the jury's need for protection in the courtroom. Although we view these issues as independently militating in favor of post-conviction relief, we conclude as well that their confluence, and the fact that Smallwood testified in prison garb and others testified in handcuffs,[11] all dovetailed to severely hamstring the presentation of defendant's theory of the case and to unfairly skew the proceedings.
We also reject the argument that relief should not be accorded defendant because of other evidence of guilt. In this regard, the Supreme Court has recognized that "Wile quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." State v. Castagna, 187 N.J. 293, 314, 901 A.2d 363 (2006). Here, there was no overwhelming evidence of defendant's guilt that might ameliorate the consequences of counsel's performance. Evidence that suggested defendant's guilt was based largely on the testimony of witnesses who provided conflicting statements about what occurred. That evidence was by no means overwhelming; indeed, the jury acquitted defendant on some of the serious charges.[12]
Ultimately, we resist the invitation to draw any firm conclusions about the weight of the evidence heard by the jury. As Justice Black said for the unanimous Court in Weiler v. United States, 323 U.S. 606, 611, 65 S.Ct. 548, 551, 89 L.Ed. 495, 499 (1945), "[w]e are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the *616 error was harmless because we think the defendant was guilty" because "[t]hat would be to substitute our judgment for that of the jury and, under our system of justice, juries alone have been entrusted with that responsibility." After canvassing the record, we find ourselves incapable of stating with any confidence whether defendant is guilty of the offenses charged; instead, we are capable of holding only that: counsel failed to fully elicit Smallwood's alibi testimony and failed to pursue the matter on appeal; that counsel failed to object or pursue on appeal the prosecutor's improper opening statement; and that viewed separately or collectively these failures and omissions, viewed in the context of other relevant circumstances,[13] deprived defendant of his constitutional rights to the effective assistance of counsel and a fair trial. Had Smallwood's testimony been more clearly elicited and had the alibi instruction been given, the jury may have more favorably viewed defendant's argument that he was not involved in the shooting. Since we were not present when the witnesses testified, and can only appreciate what the jury saw and heard by reference to a cold transcript, we cannot otherwise gauge the impact of counsel's errors. But we may confidently conclude that counsel's omissions had a reasonable probability of affecting the outcome.
The order denying post-conviction relief is reversed and the matter remanded for a new trial.
NOTES
[1] Judge Miniman did not participate in oral argument, but has participated in the decision with the consent of counsel.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The opinion disposed not only of defendant's appeal, but also co-defendant Brown's appeal. Docket Nos. A-0509-96T4 and 6508-96T4.
[4] We recognize that there are crimes that do not require a defendant's presence as to which an alibi would be of no avail. For example, an alibi instruction would not be necessary when the defendant entered into a conspiracy to commit a crime that was physically performed by others. See, e.g., United States v. Agofsky, 20 F.3d 866, 871-72 (8th Cir.1994). This is not the circumstance here. With the exception of the conspiracy, charge, as to which defendant was acquitted, defendant's actual presence and participation in the conduct that generated Powell's death was required.
[5] Had counsel's failure to serve the notice of alibi led the judge to refuse to give an alibi instruction, then we would have to adjudge the ineffective assistance of counsel argument by considering whether the failure to serve the notice fell below the professional standards imposed by the Sixth Amendment. But we interpret the judge's holdings during the trial, as amplified by his PCR decision, that his ruling was based on his conclusion that defendant's evidence did not support the claim of an alibi and not because of the failure to serve a notice of alibi.
[6] "[Defendants] as part of their general denial of guilt contend that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that they are the persons who committed the alleged offense. Where the identity of the person who committed the crime is in issue, the burden of proving that identity is upon the State. The State must prove beyond a reasonable doubt that [defendants] are the persons who committed the crime. The defendants have neither the burden nor the duty to show that the crime, if committed, was committed by someone else or to prove the identity of that other person. You must decide, therefore, not only whether the State has proven each and every clement of the offense charged beyond a reasonable doubt, but also that they are the persons who committed it."
[7] "The defendant as a part of [his] denial of guilt contends that [he] was not present at the time and place that the crime was allegedly committed, but was somewhere else and therefore could not possibly have committed or participated in the crime. Where a person must be present at the scene of the crime to commit it, the burden of proving the defendant's presence beyond a reasonable doubt is upon the State. The defendant has neither the burden nor the duty to show that [he] was elsewhere at the time and so could not have committed the offense. You must determine, therefore, whether the State has proved each and every element of the offense charged, including that of the defendant's presence at the scene of the crime and [his] participation in it." Model Jury Charge (Criminal), "Alibi" (1997).
[8] In urging a different result, the State relies upon State v. Edge, 57 N.J. 580, 591, 274 A.2d 42 (1971). Although there the Court concluded that the absence of an alibi instruction was not reversible error, it also held that "it would have been wiser for the trial judge to have honored the request." Moreover, the Court made no attempt in Edge to announce a rule to be applied in all cases, or to overrule the rule of law established in earlier cases, such as Driver, supra, 38 N.J. at 290-91, 183 A.2d 655, State v. Tanzarello, 1 N.J. Misc. 375, 376 (Sup.Ct.1923), and State v. De Geralmo, 83 N.J.L. 135, 137, 83 A. 643 (Sup.Ct.1912), which we discussed in the text above. Accordingly, we see no reason to conclude that the Court's comments regarding the specific jury charge in Edge should bind our consideration of the charge in question.
[9] We observe that defendant's trial counsel attempted to object earlier in the prosecutor's opening but was instructed that he could not then be heard:

THE PROSECUTOR: Witnesses start saying it didn't happen. Terrence Echols gives that statement to get himself out of trouble, get himself out of jail and witnesses start saying it didn't happen.
[DEFENDANT'S COUNSEL]: Judge, may be heard?
THE COURT: No, continue on.
This exchange suggests that the judge was forbidding any interruptions of the opening statements, which may have justified defense counsel's failure to interrupt later in the opening when the prosecutor made the statements now in question. To that degree, we cannot entirely fault trial counsel for failing to again interrupt the prosecutor's opening, although we note that when the prosecutor had concluded defense counsel did not then present any objections or ask to be heard on this point.
[10] Appellate counsel did argue to no avail in the direct appeal that prosecutorial misconduct had occurred because, in his summation, the prosecutor asserted that defendants did "everything they could to prevent witnesses from testifying." The focus in the PCR and now, however, is not on that discrete point, which we rejected on direct appeal.
[11] We previously indicated that defendant's argument regarding handcuffed and prisongarbed witnesses cannot constitute a basis for relief because the legal support for that argument was rendered after this case was tried. We do not now suggest otherwise, but instead find that this is a factor relevant to a consideration of whether other errors had a prejudicial impact on defendant's right to a fair trial.
[12] It is of passing interest that a polygraph examination, which was conducted by the police, indicated that defendant was truthful in denying involvement in the shooting of Powell. This evidence, however, was not admissible. The record reveals that Lieutenant Alamo provided defendant with a form indicating his waiver of his right not to take a polygraph exam and other Miranda rights. Even though unrepresented by counsel, defendant signed the waiver form. At the PCR hearing, defendant and Lieutenant Alamo provided contradictory versions of what was discussed. Lieutenant Alamo testified that he told defendant he "would either be an expert witness for him or against him, depending on the outcome of the examination . . . [i]f it goes to court." On the other hand, defendant testified that he believed from their conversation that the polygraph's results would be admitted at trial. In Point VI of this appeal, defendant argues that there was an oral stipulation and that counsel should have argued on appeal that the results of the polygraph were admissible, as his counsel had argued at trial. Because the trial judge found from this competing testimony during the PCR hearing that no agreement about the use of this evidence at trial was ever reached, see State v. McDavitt, 62 N.J. 36, 46, 297 A.2d 849 (1972), we find no substance in the current argument that appellate counsel was ineffective in the constitutional sense in failing to pursue the matter on appeal.
[13] We are also mindful that although we affirmed the conviction on direct appeal, we found, as revealed by our lengthy opinion, other trial errors, which would also have some bearing on any assessment of the impact on the outcome caused by appellate counsel's performance.