**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0950-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

DARRION K. TRENT,

    Defendant-Respondent.

_____

Submitted September 11, 2024 – Decided October 23, 2024

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-11-0775.

Esther Suarez, Hudson County Prosecutor, attorney for appellant (Meagan E. Free, Assistant Prosecutor, on the brief).

Jennifer Nicole Sellitti, Public Defender, attorney for respondent (Andrew R. Burroughs, Designated Counsel, on the brief).

PER CURIAM

Defendant was convicted by a jury of first-degree murder and other offenses. In a subsequent petition for post-conviction relief (PCR), he alleged trial counsel was ineffective for not retaining a ballistics expert to rebut testimony from the State's witness—a medical examiner—about the shooter's location and the trajectory of the fired bullets. After conducting an evidentiary hearing, the trial court granted the petition, vacated the convictions, and ordered a new trial. After reviewing the contentions set forth in the State's appeal, and considering the applicable principles of law, we affirm.

In 2017, a grand jury charged defendant in a superseding indictment with first-degree murder of Davon Gordon,[1] N.J.S.A. 2C:11-3(a)(1), (2); second-degree aggravated assault of Terrell Corbin, N.J.S.A. 2C:12-1(b)(1); second-degree aggravated assault of Gordon, N.J.S.A. 2C:2-6, :12-1(b)(1); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1).

Defendant was tried along with three co-defendants[2]—Tony Martinez, Kawon Robinson, and Katrell Trent. We described the relevant trial evidence

---

[1] Gordon's first name is spelled several ways in the record.

[2] The charges against a fourth co-defendant, Maurice Miles, were dismissed prior to trial.

A-0950-23

in our prior opinion in the direct appeal. State v. Trent, No. A-4682-18 (App. Div. Aug. 4, 2021) (slip op. at 3-7). Important to the issues raised in the PCR petition, we noted "[t]he forensic medical examiner who performed Gordon's autopsy testified on behalf of the State. [Responding to a hypothetical question, the medical examiner] said that the bullet trajectories indicated that had Gordon been lying on his back, the shooter would have been standing at his feet and slightly to the right." Id. at 4-5. We determined the trial court did not abuse its discretion in admitting the medical examiner's testimony. Id. at 13. The medical examiner's testimony did not vary from the report provided in discovery and the evidence presented to the grand jury. Id. at 9-10.

Defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2); a lesser-included disorderly persons simple assault, N.J.S.A. 2C:12-1(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1). The court sentenced him to an aggregate term of thirty years imprisonment, with a thirty-year parole ineligibility term under the No Early Release Act, N.J.S.A. 2C:43-7.2. We affirmed the convictions and sentence on appeal.

A-0950-23

In 2022, defendant filed a petition for PCR. Counsel subsequently submitted a supplemental brief in support of the petition as well as a report from Carl A. Leisinger III, a forensic ballistics/firearms consultant.

Leisinger stated he reviewed several surveillance videos of the area of the shooting. He found no evidence defendant had fired a handgun because he did not see defendant with a gun or a muzzle flash in the footage. He also noted defendant's "casual actions" of walking down the street and standing near a parked car around the time of the shooting. Leisinger stated photographs revealed the shooting occurred behind a parked car in front of a bar.

Leisinger stated it was "highly unusual for a [m]edical [e]xaminer with no formal ballistic training to opine about bullet trajectory and shooter location." He also found "there is no scientific basis for the [medical examiner's] answer to the prosecutor's hypothetical question." He stated there was no evidence that a bullet trajectory analysis had been conducted "using widely accepted available tools to determine bullet trajectory and shooter location."

Leisinger concluded "it is impossible to determine the trajectory of the six bullets fired at the victim and the location of the shooter." Since there was no muzzle flash, defendant did not appear to be holding a handgun, and he did not extend his arm in a firing motion, Leisinger determined it was not reasonably

4

probable that the gunshot had come from defendant's location as seen in the video footage.

In March 2023, the PCR court granted defendant an evidentiary hearing on the sole issue of whether trial counsel's failure to offer evidence of a ballistics expert to rebut the medical examiner's testimony was ineffective assistance of counsel. The PCR court rejected all other issues raised in the petition.

The evidentiary hearing took place in June 2023. Kevin Purvin, Esq., appointed by the Office of the Public Defender (OPD) as defendant's counsel, testified he retained Leisinger as a ballistics expert in May 2018, sending him certain surveillance footage to review. Shortly thereafter, a new attorney (trial counsel), was substituted into the case. Purvin did not remember if he saw Leisinger's June 13, 2018 reply letter setting forth a preliminary analysis prior to the substitution. However, Purvin recalled giving trial counsel's contact information to Leisinger.

Purvin stated that trial counsel contacted him to discuss the case. But Purvin could not recall whether he informed trial counsel about his retention of Leisinger as an expert witness. Purvin also testified Leisinger's November 9, 2022 report included conclusions that were consistent with his trial strategy and that he would have called Leisinger to testify if he had remained trial counsel.

A-0950-23

Trial counsel testified that, after he was privately retained by defendant, he met with Purvin and received counsel's file. He recalled Purvin stating he "sought authority for services for the public defenders for an expert," but Purvin did not provide any further "sum and substance" of the issue. The file did not contain the videos Purvin had sent to Leisinger.

Trial counsel stated he did not receive a file from the OPD but requested a copy of the outstanding discovery from the prosecutor's office. He explained, in his experience, the OPD would not always give all their discovery to privately hired counsel, so he requested the discovery materials from the prosecutor's office to make sure he had everything.

Trial counsel testified regarding the State's proofs against defendant on the murder count. He explained there was: no video footage showing defendant discharging a firearm or with a firearm before or after the incident, no eyewitnesses who saw defendant fire a gun, and no forensic evidence linking defendant to the murder.

Trial counsel did not recall whether Purvin's letter to Leisinger was in the file Purvin gave him. He also did not recall seeing Leisinger's June 2018 report in the file. The prosecutor later told the court he had obtained the trial file from the OPD and that it included the two letters.

A-0950-23

Trial counsel stated he did not think ballistics was an issue in the case. He said the State did not present a ballistics expert to testify regarding the projectile trajectory of the bullets. The only testimony came from the medical examiner after observations of the body cavity.

Trial counsel explained he cross-examined the medical examiner about the absence of stippling to negate the State's theory regarding the location of the shooter. He also questioned the medical examiner about the answer to the hypothetical question and posited his own hypothetical scenario regarding the impact of the positioning of the shooter.

Trial counsel did not think he would have used Leisinger's June 2018 analysis if he had seen it before trial, because "[a]n expert can't testify about what he sees or doesn't see on a video." He did not recall whether defendant told him that a ballistics expert had been retained.

Leisinger was qualified as an expert in ballistics and guns. He stated he was initially retained by Purvin and the OPD paid for his services. He prepared a letter after reviewing video footage and sent it to Purvin. He does not recall trial counsel ever contacting him about the case.

Leisinger later prepared a report for PCR counsel in 2022. During the evidentiary hearing, he testified consistent with his report that if a .380

A-0950-23

automatic handgun was shot six times consecutively, there would be at least three to six noticeable bright flashes, and he did not observe any gun muzzle flashes in the video footage. Leisinger also stated he did not see defendant conceal a handgun in the footage.

Leisinger disputed the medical examiner's testimony regarding the trajectory of the bullet and that the shooter was three feet away from the victim at the time of the shooting. Leisinger concluded one could not determine the bullet's trajectory or the shooter's location. He did not find any ballistic evidence that the individual in the video was the shooter or that a shooting occurred in the video.

On cross-examination, the State exposed some errors and inconsistencies in Leisinger's report from the depiction in the videos.

Defendant testified he retained trial counsel because he did not feel that Purvin was focused on his case. He stated neither Purvin nor trial counsel informed him Leisinger had been retained and he had not seen Leisinger's June 2018 letter to Purvin.

On cross-examination, defendant stated he did not see paragraph nine of the November 17, 2022 certification accompanying his PCR petition that he

signed. In that paragraph, defendant said Purvin advised he had retained a ballistics expert.

The PCR court granted the petition on October 24, 2023. The PCR court noted initially that

> [t]he State's evidence against defendant consisted of the [m]edical [e]xaminer's answer to a hypothetical question during direct examination related to the trajectory of the bullets fired and the location of the shooter, as well as a blurry video purportedly showing defendant standing where the [m]edical [e]xaminer opined the bullets came from at the alleged time of the shooting.

After reviewing the evidence presented during the evidentiary hearing and the applicable principles of law, the PCR court found defendant's trial counsel was ineffective under the first Strickland[3] prong for failing to consult a ballistics expert despite being on notice from the grand jury proceedings and the medical examiner's report that the trajectory of the bullets and the positioning of the victim's body would be offered as evidence against defendant.

The PCR court noted that Purvin "understood the necessity of countering the State's witness's testimony with its own ballistic expert." Purvin retained Leisinger, and at the evidentiary hearing, after reviewing the expert's report

---

[3] Strickland v. Washington, 466 U.S. 668, 687 (1984).

prepared for the PCR application, Purvin advised he would have used the expert at trial as the report supported the defense theory of the case.

The PCR court found trial counsel did not review the complete file and so was "unaware that his predecessor had obtained approval to hire a ballistics expert." The court stated: "The need for trial counsel to consult and present rebuttal ballistic evidence [was] of critical importance to [defendant's] defense."

The PCR court found trial counsel's "failure to retain or consult his own ballistic expert deprived [defendant] the opportunity to scientifically challenge that he was the shooter or support his position that a third party was responsible for the shooting." The court stated "Leisinger's testimony, established a basis to question the foundation of the [m]edical [e]xaminer's conclusion as to the location of the shooter. Given the limited evidence in the record of [defendant's] guilt, this failure to present rebuttal ballistic expert [evidence] is of critical importance." The PCR court further found the State would likely have been unable to meet its burden to prove defendant was guilty if it relied solely on the surveillance video.

In examining the second prong of the Strickland standard, the court explained "the record only weakly support[ed] the State's conclusion, leaving the result of the trial far more vulnerable to being affected by trial counsel's

ineffective assistance." The surveillance video was blurry, and it was difficult to determine the position of the victim's body. The court also explained trial counsel's deficiency meant the jury only heard one theory as to where the shooter was standing, which "was based on [an] assumption of facts that the State presented." Leisinger's testimony would have contradicted the medical examiner's testimony and could have altered the outcome of the trial.

The PCR court stated:

> Trial counsel's failure to retain an expert deprived the jury of the opportunity to consider the expert's testimony and weigh it considering the other evidence at trial. The expert's testimony raised genuine questions which ultimately may have affected the results of the proceeding. . . . [Defendant] need only show that there is a reasonable probability that the result would have been different, had counsel retained or at the very least consulted with an expert in preparation for trial.

As they did not hear any testimony from a defense ballistics expert, the court concluded the error "had a reasonable probability to impact the results of the proceeding[]." Therefore, the court granted PCR.

On appeal, defendant raises the following issues for our consideration:

> THE PCR COURT ERRED IN GRANTING DEFENDANT'S PETITION FOR [PCR].

11

A. The PCR [C]ourt [E]rred in [F]inding [C]ounsel was [I]neffective for [N]ot [C]onsulting with and [C]alling a [B]allistics [E]xpert at [T]rial.

B. The PCR [C]ourt [E]rred in [F]inding Defendant [E]stablished the [S]econd [P]rong of Strickland as that [F]inding was [B]ased [U]pon [M]aterial [F]actual [E]rrors that are [C]ontradicted by the [R]ecord.

PCR "is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). It is meant to be "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" State v. Nash, 212 N.J. 518, 540 (2013) (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

We are "necessarily deferential to a PCR court's factual findings based on its review of live witness testimony" and "uphold the PCR court's findings that are supported by sufficient credible evidence in the record." Nash, 212 N.J. at 540. However, our review of the PCR court's legal conclusions is de novo. Id. at 540-41.

To succeed on a claim of ineffective assistance of counsel, a defendant must establish both prongs of the test set forth in Strickland, 466 U.S. at 687[4] by a preponderance of the evidence. State v. Gaitan, 209 N.J. 339, 349-50

---

[4] The New Jersey Supreme Court adopted the Strickland test in State v. Fritz, 105 N.J. 42, 58 (1987).

A-0950-23

(2012). First, they must show that "counsel's performance was deficient." Strickland, 466 U.S. at 687. This requires demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Ibid. The Constitution requires "reasonably effective assistance[,]" so an attorney's performance may not be attacked unless they did not act "within the range of competence demanded of attorneys in criminal cases" and instead "fell below an objective standard of reasonableness." Id. at 687-88.

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). However, when an individual alleges their counsel failed to retain an expert to rebut testimony presented by the prosecution, they can overcome that presumption upon a "showing that independent experts would have reached materially different conclusions." State v. Marshall, 148 N.J. 89, 211 (1997).

Under the second prong of the Strickland test, the defendant must show that "the deficient performance prejudiced the defense." 466 U.S. at 687. This

A-0950-23

means that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. However, they are "not required to show with mathematical precision that [they] would have been acquitted . . . but for trial counsel's mistakes." State v. Echols, 398 N.J. Super. 192, 203 (App. Div. 2008), rev'd on other grounds, 199 N.J. 344 (2009). Instead, a defendant must demonstrate that "[their] attorney's errors and omissions were of such significance as to undermine confidence in the outcome." Ibid.

The PCR court held an evidentiary hearing on the sole issue of whether trial counsel's failure to offer evidence of a ballistics expert to rebut the medical examiner's testimony was ineffective assistance of counsel. The court heard testimony from two attorneys who represented defendant, the ballistics expert Leisinger, and defendant. The court subsequently issued a comprehensive written decision granting PCR.

After reviewing the record, we conclude the PCR court's factual findings are supported by the record and, in light of those facts, the legal conclusions are sound. We therefore affirm substantially for the reasons expressed in the well-reasoned opinion. We add the following comments.

The medical examiner's answer to the hypothetical question was a critical piece of evidence before the jury. As the PCR court found, there was no direct

evidence establishing defendant as the shooter. Trial counsel knew the State intended to pose the hypothetical question to the medical examiner based on the grand jury presentation, and the medical examiner would answer consistent with its report.

Therefore, the PCR court concluded trial counsel was deficient in not consulting with and retaining a ballistics expert to refute the medical examiner's testimony. In fact, Leisinger, who was retained by the original defense attorney, contradicted the medical examiner's hypothetical answer evidence, opining the shooter's location and the bullets' trajectory could not be determined either from the video footage or any other evidence. Therefore, the two experts' conclusions were "materially different." Marshall, 148 N.J. at 211. We are satisfied the PCR court sufficiently supported its conclusion that defense trial counsel was deficient in his representation.

Defendant must then demonstrate "a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The State essentially asserts Leisinger's conclusions are unsupported by the evidence and his testimony would not have changed the jury's verdict.

We are mindful that, at this stage, it is important to examine the strength of the State's evidence. State v. Gideon, 244 N.J. 538, 556 (2021). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 446 U.S. at 696).

The State's arguments on appeal focus on errors and inconsistencies in Leisinger's report. However, "[i]t is within the sole and exclusive province of the jury to determine the credibility of the testimony of a witness." State v. Vandeweaghe, 351 N.J. Super. 467, 481 (App. Div. 2002), aff'd, 177 N.J. 229 (2003). In a new trial, Leisinger's opinions and conclusions would be subject to cross-examination.

We discern no error in the PCR court's conclusion that defendant was prejudiced when counsel did not present Leisinger's testimony to attempt to rebut one of the critical pieces of evidence against him. As stated, Leisinger's conclusion that the shooter's location and bullet trajectories were indeterminable would have rebutted the State's evidence presented against defendant and could have changed the outcome of the case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0950-23